DAVID H. STERN, SBN 196408
ALEX E. SPJUTE, SBN 229796
JENNIFER F. DELAROSA, SBN 312110
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:  310.820.8800
Facsimile:   310.820.8859
Email:    dstern@bakerlaw.com
          aspjute@bakerlaw.com
          jdelarosa@bakerlaw.com

*Attorneys for Defendant*
RDO EQUIPMENT CO.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON MUNOZ, on behalf of himself, all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>RDO EQUIPMENT CO.; and DOES 1-100,<br><br>Defendants. | Case No.:<br><br>*[Stanislaus County Superior Court Case No. CV-23-002243]*<br><br>**DEFENDANT RDO EQUIPMENT CO.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>*[Filed concurrently with Declaration of Emily Keeling; Civil Cover Sheet; and Corporate Disclosure Statement]*<br><br>Action Filed:  4/25/2023<br>FAC Filed:     5/30/2023 |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant RDO EQUIPMENT CO. hereby removes the action filed by Plaintiff SIMON MUNOZ in the Superior Court of the State of California for the County of Stanislaus, captioned *Simon Munoz v. RDO Equipment Co.,* Case No. CV-23-002243, to the United States District Court for the Eastern District of California.

## I.
## **BACKGROUND**

1. This is a wage and hour case. On April 25, 2023, Plaintiff Simon Munoz ("Plaintiff") filed a Private Attorneys General Act of 2004 ("PAGA") Complaint against Defendant RDO Equipment Co. ("RDO" or "Defendant") in the Superior Court of the State of California for the County of Stanislaus, captioned *Simon Munoz v. RDO Equipment Co.,* Case No. CV-23-002243 (the "Complaint"). RDO was served with the Complaint on April 26, 2023. True and correct copies of the Summons and Complaint served upon RDO are attached hereto as **Exhibit 1**.

2. On May 30, 2023, Plaintiff filed the operative First Amended Class Action Complaint ("FAC") in in the Superior Court of the State of California for the County of Stanislaus, captioned *Simon Munoz v. RDO Equipment Co.,* Case No. CV-23-002243. Unlike the original Complaint, the operative FAC abandons the representative PAGA claims altogether, and instead asserts, for the first time, putative class action claims. RDO was served with the FAC on May 30, 2023. A true and correct copy of the FAC served upon RDO is attached hereto as **Exhibit 2**.

3. As explained *infra* Part III, ¶ 24, this Notice of Removal is timely because it is filed within thirty days after receipt by RDO, through service or otherwise, of a copy of the FAC from which it was first ascertained that the action is one which has become removable. *See* 28 U.S.C. § 1446(b)(3).

4. The operative FAC asserts nine causes of action based on alleged violations of several California Labor Code wage and hour laws, namely: (1) failure to pay straight time wages, (2) failure to pay overtime wages, (3) failure to provide meal periods, (4) failure to authorize and permit rest periods, (5) failure to adopt a compliant sick pay/paid time off policy, (6) failure to comply with itemized employee wage statement provisions, (7) failure to pay all wages due at termination of employment, (8) failure to reimburse, and (9) violation of unfair competition law (unfair competition premised on the aforementioned alleged Labor Code violations).

5. Plaintiff, on behalf of the putative class, asserts that he and the class are entitled to, among other things, an award of compensatory damages, liquidated damages, penalties, restitution to the class, prejudgment interest on all damages awarded, attorneys' fees and costs, and such other and further relief as the Court deems proper.  (FAC Prayer for Relief.)

## II.

## **REMOVAL UNDER CAFA IS APPROPRIATE**

6. This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332(d), and removal is proper under 28 U.S.C. §§ 1441 and 1446 because it is a civil action that satisfies the requirements stated in the Class Action Fairness Act of 2005 ("CAFA").  *See* 28 U.S.C. § 1332(d) & 1453).  CAFA extends federal jurisdiction over class actions where (1) any member of a class of plaintiffs is a citizen of a State different from any defendant, (2) the putative class consists of more than 100 members, and (3) the amount in controversy exceeds $5 million.  28 U.S.C. § 1332(d).  This includes any class action filed under Federal Rule of Civil Procedure 23 or "similar State statute or rule of judicial procedure," such as California Code of Civil Procedure § 382.  28 U.S.C. § 1332(d)(1)(B); *see also* FAC ¶¶ 1, 31, 33 (citing Cal. Code Civ. Proc. § 382).  As set forth below, each of these CAFA requirements are readily satisfied.

7.  Because CAFA was enacted to facilitate federal courts' adjudication of certain class actions, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Jordan v. Nationstar Morg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (reversing remand order "[i]n light of the Supreme Court's clear statement in *Dart Cherokee* that Congress intended for no antiremoval presumption to attend CAFA cases").

**A.  Minimal Diversity Is Satisfied.**

8.  While diversity removal normally requires complete diversity between plaintiffs and defendants, removal of a class action under CAFA only requires "minimal diversity", i.e., that at least one member of a class of plaintiffs be diverse from one defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).  This requirement is readily satisfied here.

9.  <u>Plaintiff's Citizenship</u>.  Plaintiff is a citizen of California, which is where he alleges he resides and has worked for RDO at all relevant times.  (*See* FAC ¶ 23.)  For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is prima facie evidence of domicile.  *See, e.g., District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941); *State Farm Mutual Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  Accordingly, because Plaintiff, by his own admission, resides in California, Plaintiff is a citizen of California.

10.  Moreover, the vast majority of the other putative class members are citizens of California, who have worked for the alleged Defendant within California.  (*See* FAC ¶ 31 (defining proposed class to include "[a]ll individuals who are employed or have been employed by Defendant in the State of California . . . and worked at one of Defendant's warehouses in California").)

11.  <u>RDO Equipment Co.'s Citizenship</u>.  Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been

incorporated and of the State where it has its principal place of business." A corporation's "principal place of business", or its so-called "nerve center", is "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (rejecting all prior tests in favor of the "nerve center" test). "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters." *Id*.

12. Here, Defendant RDO Equipment Co., the only identified defendant in the Complaint, is a Delaware corporation that maintains its principal place of business in Fargo, North Dakota. (Declaration of Emily Keeling ("Keeling Decl.") ¶ 4.) Pursuant to the *Hertz* nerve center test, RDO's nerve center is in North Dakota because its headquarters are located in North Dakota, it maintains its administrative offices, corporate records, and files in North Dakota, and most of its corporate officers reside in North Dakota. (*Id.*) The overall day-to-day operational, financial, and accounting decisions required for RDO's business are the responsibility of personnel located in North Dakota. (*Id.*) Accordingly, for purposes of diversity, RDO is a citizen of Delaware and North Dakota—not California.

13. Minimal diversity of citizenship exists under CAFA because Plaintiff (who is a member of the putative class) is a citizen of California, and RDO is a citizen of Delaware and North Dakota. Therefore, at least one plaintiff is a citizen of a different state than at least one defendant, satisfying CAFA's minimal diversity requirement. *See* 28 U.S.C. § 1332(d)(2)(A).

**B.  The Putative Class Exceeds 100 Members.**

14. Plaintiff purports to bring this action on behalf of himself and "[a]ll individuals who are employed or have been employed by Defendant in the State of California as hourly non-exempt employees and worked at one of Defendant's warehouses in California at any time during the period of the relevant statute of

limitations." (FAC ¶ 31.) Plaintiff also alleges RDO "currently employ[s], and during the liability period employed, over one hundred (100) Class Members". (*Id.* ¶ 34.)

15. From April 25, 2019 through the present, the hourly-paid or non-exempt employees employed in California by RDO at any time include approximately 585 employees. (Keeling Decl. ¶ 10a.)

16. Therefore, the putative class that Plaintiff purports to represent consists of at least 100 members.

## C. The Amount In Controversy Exceeds $5 Million.

17. CAFA further requires that, for the district court to exercise jurisdiction, the matter in controversy must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs". 28 U.S.C. § 1332(d)(2). When determining the amount in controversy, "the claims of the individual class members shall be aggregated". 28 U.S.C. § 1332(d)(6). The U.S. Supreme Court has held that, as specified in 28 U.S.C. § 1446(a), a defendant's notice of removal need include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"; the notice need not contain evidentiary submissions. *Dart Cherokee*, 135 S. Ct. at 553.

18. Following *Dart Cherokee*, district courts in California have held that where a removing defendant relies on assumed rates of wage-and-hour violations, the assumed rates are reasonable if they are "sufficiently supported" by the plaintiff's *own allegations* as well as the evidence submitted by the defendant. *See, e.g.*, *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015); *see also Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *3 (C.D. Cal. May 9, 2018) ("Defendant may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

///

19. This action involves Plaintiff's alleged claims against RDO for purported failure to: pay overtime and straight time wages, provide meal periods and pay meal period premiums, provide rest periods and pay rest period premiums, adopt a compliant sick pay/paid time off policy, provide accurate wage statements, pay all wages due at the time of termination of employment, reimburse business expenses, as well as unfair competition. Plaintiff, on behalf of the putative class, asserts that he and the class are entitled to, among other things, an award of compensatory damages, liquidated damages, penalties, restitution to the class, prejudgment interest on all damages awarded, attorneys' fees and costs, and such other and further relief as the Court deems proper. (FAC Prayer for Relief.)

20. RDO denies Plaintiff's claims entirely. But for purposes of removal only, and without conceding that Plaintiff or the putative class members are entitled to or could recover damages in any amount, the FAC's allegations, theories, and Prayer for Relief place in controversy an aggregate amount in excess of $5 million, exclusive of interest and costs.

    a. Here, the hourly non-exempt employees in the putative class were regularly scheduled to work at least 8-hour shifts, five days a week. (Keeling Decl. ¶ 9.) The hourly non-exempt employees in the putative class earned an average of approximately $28.66 per hour and each worked at least an average of 118 weeks per employee since April 25, 2019. (*Id.* ¶¶ 10b-10c.)

    b. <u>Second Cause of Action (Failure to Pay All Overtime Wages)</u>. The FAC alleges RDO has "a ***continuous*** and ***consistent policy*** of requiring employees to work before clocking in, after clocking out, and during meal periods." (FAC ¶ 72 (emph added).) The FAC further alleges RDO "fails to pay for ***all*** time during which Plaintiff and Class Members work throughout their shift. As ***most shifts worked are over eight (8) hours*** in length, the time during which employees are uncompensated before clocking in, after clocking out, and/or during any other time in the day when employees were subject to Defendants' and/or DOES' control

and/or were not relieved of all work duties, should be, but is not, paid at the applicable overtime rate." (FAC ¶ 77 (emph. added).) "Courts in this Circuit have often found a 20% violation rate (one unpaid overtime hour per week) a reasonable and 'conservative estimate' when plaintiff alleges a 'policy and practice' of failing to pay overtime wages." *Sanchez v. Abbott Lab'ys*, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) (finding one hour of unpaid overtime per week reasonable based on "pattern and practice" allegations); *e.g.*, *Wicker v. ASC Profiles LLC*, 2021 WL 1187271, at *2-3 (E.D. Cal. Mar. 30, 2021) (same); *Marquez v. Southwire Company, LLC*, 2021 WL 2042727, at *6 (C.D. Cal. May 21, 2021) ("[C]ourts have repeatedly held that assumptions of one hour of missed overtime per pay period are reasonable, based on plaintiffs' allegations of 'pattern and practice' violations."); *Oda v. Gucci America, Inc.*, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (finding one hour of unpaid overtime per week reasonable based on allegation that defendant "sometimes" failed to pay overtime). Based on the FAC's broad "continuous and consistent policy" allegations, and assuming 40 actual workweeks in a 52-week year (to account for vacations, holidays, and days off)[1], RDO conservatively assumes that Plaintiff and the putative class were not paid one hour of overtime wages per workweek, which amounts to approximately **$2,282,769** in controversy for the overtime claim (585 putative class members x 118 workweeks x 40/52 x 1 hour of unpaid overtime x $42.99 [or 1.5 x $ 28.66 average hourly rate]).

   c. <u>Third Cause of Action (Failure to Provide Meal Periods, or Compensation in Lieu Thereof)</u>.  The FAC alleges that RDO consistently failed to provide putative class members with meal periods in violation of California law, and Plaintiff seeks unpaid meal period premiums of one hour of pay for each missed meal period for himself and the putative class for each instance the required meal periods were not provided. (*See* FAC ¶¶ 80-94.)  Specifically, the FAC

---

[1] *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (40 workweeks a year is a reasonable assumption).

alleges that RDO failed to provide timely and complete uninterrupted meal periods, including by failing to provide a suitable rest area "**in each and every shift**" (*id.* ¶ 87 (emph. added)), "imposing a **continuous** and **consistent policy** requiring Plaintiff and the Class members to work through their meal periods to satisfy the demanding workload duties imposed by" RDO (*id.* ¶ 90 (emph. added)), and "institut[ing] a **consistent policy/practice**" of "**never**" providing second meal periods. (*Id.* ¶ 91 (emph. added)).

      d.    Numerous courts in the Ninth Circuit "have found violation rates as high as 60% to be reasonable to calculate the amount in controversy when allegations represent a 'pattern and practice' or 'policy and practice' of" meal period violations. *Zamora v. Penske Truck Leasing Co.*, L.P. 2020 WL 4748460, at *4 (C.D. Cal. Aug. 17, 2020); *e.g.*, *Bryant v. NCR Corporation*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding a 60% violation rate was a reasonable and "conservative[]" assumption for missed meal periods based on "policy and practice" allegations); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) (finding 50% violation rate for noncompliant meal periods reasonable based on "pattern and practice" allegations); *Oda,* 2015 WL 93335, at *5 (finding a 50% violation rate for noncompliant meal periods reasonable based on "policy or practice" allegations); *Olson v. Beckton, Dickinson and Company*, 2019 WL 4673329, at *5 (S.D. Cal. 2019) (finding 25% violation rate for noncompliant meal periods reasonable based on "pattern and practice" allegations); *Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400, at *3-4 (C.D. Cal. June 22, 2017) (finding 40% violation rate for noncompliant meal periods reasonable based on "pattern and practice" allegations); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (9th Cir. 2020) (finding "a violation rate of 40%—a median between 25% and 60%—to be reasonable" based on "pattern and practice" allegations).

      e.    Although RDO denies any and all liability, conservatively assuming a 40% violation rate—which is a reasonable assumption based on

Plaintiff's broad allegations that RDO engaged in a "***continuous*** and ***consistent policy***" of failing to provide compliant meal periods and pay meal period premiums (*see* FAC ¶¶ 80-94 (emph. added))—and again assuming the putative class suffered violations during 40 actual workweeks in a 52-week year, then the amount in controversy for this claim alone equals **$3,043,692** (585 putative class members x 118 workweeks x 40/52 x 40% violation rate (two meal period violations per week) x 1 hour of premium pay x $28.66 average hourly rate).

    f. <u>Fourth Cause of Action (Failure to Authorize and Permit Rest Periods)</u>.  The FAC alleges that RDO consistently failed to provide putative class members with rest periods in violation of California law, and Plaintiff seeks unpaid rest period premiums of one hour of pay for each missed meal period for himself and the putative class for each instance the required meal periods were not provided.  (*See* FAC ¶¶ 95-105.)  Specifically, the FAC alleges that RDO failed to provide timely and complete uninterrupted rest periods, including by "***never***" providing rest breaks (*id.* ¶ 98 (emph. added)), forcing employees to stay on premises and failing to provide a suitable rest area "***in each and every shift***" (*id.* ¶¶ 99-100 (emph. added)), and "imposing a ***continuous*** and ***consistent policy*** requiring Plaintiff and the Class members to work through their rest periods to satisfy the demanding workload duties imposed by" RDO (*id.* ¶ 102 (emph. added)).  "Courts in the Ninth Circuit have found a 10% to 30% violation rate to be reasonable when the plaintiff claims a 'pattern and practice' of rest period violations." *Sanchez*, 2021 WL 2679057, at *5; *e.g.*, *Bryant*, 284 F. Supp. 3d at 1151 (finding a 30% violation rate was a reasonable and "conservative[]" assumption for missed rest breaks based on "policy and practice" allegations); *Elizarraz*, 2019 WL 1553664, at *3-4 (finding 25% violation rate for missed rest breaks reasonable based on "pattern and practice" allegations); *Oda,* 2015 WL 93335, at *5 (finding a 50% violation rate for missed rest breaks reasonable based on "policy or practice" allegations); *Olson*, 2019 WL 4673329, at *5 (S.D. Cal.

2019) (finding 25% violation rate for missed rest breaks reasonable based on "pattern and practice" allegations); *Torrez*, 2017 WL 2713400, at *3-4 (C.D. Cal. June 22, 2017) (finding 20% violation rate for missed rest breaks reasonable based on "pattern and practice" allegations).

   g.   Although RDO denies any and all liability, conservatively assuming a 20% violation rate—which is a reasonable assumption based on Plaintiff's broad allegations that RDO engaged in a "***continuous* and *consistent policy***" of "***never***" providing compliant rest periods and paying rest period premiums (*see* FAC ¶¶ 95-105 (emph. added))—and again assuming the putative class suffered violations during 40 actual workweeks in a 52-week year, then the amount in controversy for this claim alone equals **$3,043,692** (585 putative class members x 118 workweeks x 40/52 x 20% violation rate (two rest break violations per week) x 1 hour of premium pay x $28.66 average hourly rate).

   h.   <u>Seventh Cause of Action (Failure to Pay All Wages Due at the Time of Termination from Employment)</u>.   The FAC alleges RDO has "a ***continuous policy*** of not providing final wages to employees who are fired at the time of termination or who quit within seventy-two (72) hours of their leaving" RDO's employ; "Numerous members of the Class are no longer employed by RDO"; and RDO "did not pay ***all*** timely wages owed at the time of their termination" nor did RDO "pay ***all*** premium wages owed at the time of their termination." (FAC ¶¶ 139, 142 (emph. added).)  The FAC further alleges, "As a consequence of Defendant RDO's and/or DOES' willful conduct in not paying wages owed at the time of separation from employment, Plaintiff and members of the proposed Class are entitled to ***thirty (30) days'*** worth of wages as a penalty under California Labor Code section 203, together with interest thereon and attorneys' fees and costs." (FAC ¶ 150 (emph. added).)  Here, 219 hourly non-exempt employees in the putative class separated from employment with RDO, and these employees earned an average of approximately $25.73 per hour.  (Keeling

Decl. ¶ 10a.) Although RDO denies any and all liability, based on the FAC's broad "continuous policy" allegations, the amount in controversy for the untimely final wages claim alone equals **$1,352,368** (219 former employees x $25.73 average hourly rate x 8 hours per day x 30 days). *See Marquez*, 2021 WL 2042727, at *6 (finding 100% violation rate reasonable for failure to timely pay final wages based on "pattern and practice" allegations); *Vasquez v. RSI Home Products, Inc.*, 2020 WL 6778772, at *9 (C.D. Cal. Nov. 12, 2020) (same); *Noriesta*, 2019 WL 7987117, at *1 & 4 (same); *see also Jaureugi v. Roadrunner Transportation Services, Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (finding it improper to reject defendant's reasonable assumption that each terminated employee would be entitled to the maximum 30-day waiting time penalty).

   i. <u>Conservative Total Amount in Controversy</u>. Based on the claims and reasonable assumptions described above, the class-wide amount in controversy is conservatively estimated to be at least $9 million, well exceeding the $5 million CAFA threshold.

| Claim | Amount in Controversy |
|---|---|
| Unpaid Overtime Wages | $2,282,769 |
| Unpaid Meal Period Premiums | $3,043,692 |
| Unpaid Rest Period Premiums | $3,043,692 |
| Unpaid/Untimely Final Wages | $1,352,368 |
| **TOTAL** | **$9,722,521** |

  21. The foregoing calculations, which present "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," *Dart Cherokee*, 135 S. Ct. at 553, do not even include Plaintiff's class-wide claims alleging a "continuous and consistent policy" of unpaid straight time wages, noncompliant wage statements, or unreimbursed business expenses—amounts that, if included, would bring the amount in controversy in even greater excess of $5 million.

///

### III.

### **COMPLIANCE WITH REMOVAL STATUTE AND LOCAL RULES**

22. The Notice of Removal was filed in the proper venue because the United States District Court for the Eastern District of California embraces the Superior Court of the State of California for the County of Stanislaus, which is the State court where Plaintiff brought this action and where it is pending. 28 U.S.C. §§ 1441(a) & 1446(a); (*see generally* FAC).

23. The Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. 28 U.S.C. § 1446(a).

24. The Notice of Removal is timely because it was filed within thirty days after receipt by RDO, through service or otherwise, of a copy of the FAC from which it first ascertained that the action is one which has become removable. 28 U.S.C. § 1446(b)(3); *see e.g.*, *Amezcua v. CRST Expedited Inc.*, 2023 WL 2002085, at *4 (N.D. Cal. Jan. 31, 2023) (finding CAFA removal of amended complaint timely where removability of the action was not clear from the facts of the original complaint). The original Complaint only asserted representative claims under PAGA (*see* Ex. 1 (Compl.)), and because "'a representative action under PAGA is not a class action,'" *Kim v. Reins Int'l California, Inc.*, 9 Cal. 5th 73, 87 (2020), the original Complaint did not meet the federal jurisdictional requirements under CAFA. Plaintiff filed the operative FAC on May 30, 2023, and as a result, asserted class claims for the first time, as well as a putative class size of at least 500 members, eclipsing the 100 needed to invoke federal jurisdiction under CAFA, and exponentially increasing the amount in controversy as well. Plaintiff initiated service on RDO on May 30, 2023. (*See* Ex. 2 (FAC Proof of Service).) Accordingly, the Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(3).

25. The Notice of Removal properly disregards Doe defendants. Although Plaintiff has named fictitious defendants "DOES 1 through 100," their consent to federal jurisdiction is not required to effect removal. *See* 28 U.S.C. § 1453(b) ("A

class action may be removed to a district court of the United States in accordance with section 1446 . . . except that such action may be removed by any defendant without the consent of all defendants."); *see also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).

26. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all additional process, pleadings, and orders served upon RDO in this action are attached hereto as **Exhibit 3**.

27. Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, RDO is filing a Corporate Disclosure Statement concurrently with this Notice of Removal.

28. As required by 28 U.S.C. § 1446(d), RDO is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California for the County of Stanislaus.

## VI.
## **CONCLUSION**

29. For the reasons stated above, RDO respectfully requests that this Court exercise jurisdiction over this action and enter orders and grant relief as may be necessary to secure removal and to prevent further proceedings in this matter in the Superior Court of the State of California for the County of Stanislaus. RDO further requests such other relief as the Court deems appropriate.

Dated: June 28, 2023

Respectfully submitted,
**BAKER & HOSTETLER LLP**

By: /s/ David H. Stern
DAVID H. STERN
ALEX E. SPJUTE
JENNIFER F. DELAROSA

*Attorneys for Defendant*
RDO EQUIPMENT CO.