1  David Mara, Esq. (230498)
2  Jill Vecchi, Esq. (299333)
   **MARA LAW FIRM, PC**
3  2650 Camino Del Rio North, Suite 302
   San Diego, California 92108
4  Telephone: (619) 234-2833
   Facsimile: (619) 234-4048
5

6  Douglas Han, Esq. (232858)
   Shunt Tatavos-Gharajeh, Esq. (272164)
7  William Wilkinson, Esq. (346777)
   **JUSTICE LAW CORPORATION**
8  751 N. Fair Oaks Avenue, Suite 101
   Pasadena, California 91103
9  Telephone: (818) 230-7502
   Facsimile: (818) 230-7259
10

11 Attorneys for Plaintiff SIMON MUNOZ,
   on behalf of herself, all others similarly situated,
12 and on behalf of the general public.

13
                 **UNITED STATES DISTRICT COURT**
14
                 **EASTERN DISTRICT OF CALIFORNIA**
15

16

17 SIMON MUNOZ, on behalf of himself, all        Case No. 1:23-CV-00979-ADA-HBK
   others similarly situated, and on behalf of the
18 general public,                               [*Hon. Ana de Alba; Magistrate Judge
                                                 Helena M. Barch-Kuchta*]
19                 Plaintiffs,
                                                 **PLAINTIFF SIMON MUNOZ'S**
20        v.                                      **OPPOSITION TO DEFENDANT RDO**
                                                 **EQUIPMENT CO.'S MOTION TO**
21 RDO EQUIPMENT CO.; and DOES 1-100,            **COMPEL INDIVIDUAL ARBITRATION**
                                                 **AND DISMISS OR STAY ACTION**
22                 Defendants.
                                                 [Motion Will Be Decided on the Papers
23                                               Per ECF No. 11]

24                                               Action Filed:    4/25/2023
                                                 FAC Filed:       5/30/2023
25                                               Removal Filed: 6/29/2023

26

27

28
                                    i

1

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND...................................................................................1

III.  LEGAL STANDARD ............................................................................................4

IV.   FORMATION - THERE IS NO EXPRESS OR IMPLIED AGREEMENT TO ARBITRATE PLAINITFF'S CLAIMS...........................................................................................5

    A. An Express Agreement to Arbitrate Does Not Exist ............................................6

    B. An Implied Agreement to Arbitrate is Not Present ..............................................9

V.    ARBITRABILITY - THERE IS NO CLEAR AND UNMISTAKABLE DELEGATION CLAUSE AND THEREFORE THIS COURT HAS THE POWER TO DETERMINE WHETHER THE ARBITRATION PROVISION IS ENFORCEABLE.................................................11

VI.   RDO'S ARBITRATION PROVISION IS UNENFORCEABLE BECAUSE IT IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE .........................................13

    A. RDO's Arbitration Provision is Procedurally Unconscionable ...........................14

    B. RDO's Arbitration Provision is Substantively Unconscionable..........................15

       i.   RDO's Arbitration Provision Lacks Mutuality.............................................15

       ii.  RDO Delegates Plaintiff to Employer-Controlled Dispute Resolution ......16

       iii. RDO Impermissibly Limits Discovery ........................................................16

       iv. RDO Requires Confidential Arbitration ......................................................17

       v.  Plaintiff is Subject to Attorney Fees He would Otherwise be Entitled to in a Judicial Forum .................................................................................................18

       vi.  RDO requires out-of-state arbitration .........................................................18

       vii. RDO Places Impermissible Time Limitations .............................................19

       viii. RDO's Arbitration Provision Waives a Right to a Berman Hearing........................19

    C. RDO's Arbitration Provision is Permeated With Unconscionability and is Unenforceable ...................................................................................................20

VII.  CONCLUSION......................................................................................................20

ii

1

## TABLE OF AUTHORITIES

2

## CASES

3  *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771 (2012) .................................................. 9, 13

4  *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000).............. 15, 20

5  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ................................................................ 4

6  *AT&T Technologies, Inc. v. Communications Workers* 475 U.S. 648 (1986)......................... 5, 11

7  *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237 (2016) ................................................................. 14

8  *Beco v. Fast Auto Loans, Inc.*, 86 Cal. App. 5th 292 (2022)............................................ 13, 16, 17

9  *Best Sunshine Int'l, LTD Bvi v. Commonwealth Casino Comm'n*, 2023 U.S. App.

10      LEXIS 16315 (9th Cir. June 28, 2023) ................................................................................... 12

11  *Bodine v. United Aircraft Corp.*, 52 Cal. App. 3d 940, 945 (1975) ................................................ 4

12  *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ................................................................ 12

13  *Bunker Hill Park Ltd. v. U.S. Bank Nat'l Assn.*, 231 Cal. App. 4th 1315 (2014).......................... 4

14  *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227 (2016).............................................................. 18

15  *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022)............................................ 5

16  *Davis v. Kozak*, 53 Cal. App. 5th 897 (2020) ............................................................................... 15

17  *De Leon v. Pinnacle Prop. Mgmt. Servs., LLC*, 72 Cal. App. 5th 476 (2021) ...................... passim

18  *Engineers Architects Assn. v. Community Development Dept.*, 30 Cal.App.4th 644

19      (1994).......................................................................................................................................... 4

20  *Esparza v. Sand & Sea, Inc.*, 2 Cal.App.5th 781 (2016) ................................................................ 9

21  *Granite Rock Company v. International Brotherhood of Teamsters*, 561 U.S. 287

22      299 (2010).................................................................................................................................... 5

23  *Harmon v. RDO Equip. Co.*, No. EDCV 18-02602JVS(KKx), 2019 U.S. Dist.

24      LEXIS 166029 (C.D. Cal. July 3, 2019)................................................................................... 12

25  *Higgins v. Superior Court*, 140 Cal. App. 4th 1238 (2006) ........................................................ 14

26  *Hotels Nevada v. L.A. Pacific Center Inc.*, 203 Cal.App.4th 336 (2012)....................................... 5

27  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) .................................................... 5

28  *Kummetz v. Tech Mold*, 152 F.3d 1153 (9th Cir. 1998) ........................................................... 6, 7

1  *Lifescan, Inc. v. Premier Diabetic Servs. Inc.*, 363 F.3d 1010 (9th Cir. 2004) ............................. 4

2  *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107 (2004) ........................................... 16

3  *Mercuro v. Superior Court*, 96 Cal. App. 4th 167 (2002) ........................................................... 16

4  *Mills v. Facility Sols. Grp., Inc.*, 84 Cal. App. 5th 1035 (2022) ................................................. 17

5  *Murrey v. Superior Court*, 87 Cal. App. 5th 1223 (2023) ........................................................... 18

6  *Najarro v. Superior Court*, 70 Cal. App. 5th 871 (2021) ....................................................... 14, 15

7  *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756 (9th Cir. 1997) .................................... 6, 7

8  *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267 (2004) ......................................... 16

9  *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111 (2019) .................................................................................. 19

10  *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659 (1993) ...................................... 18

11  *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US) LLC*, 55 Cal. 4th 223

12  (2012) ................................................................................................................................. 5

13  *Pokorny v. Quixtar*, 601 F.3d 987 (9th Cir. 2010) ........................................................................ 5

14  *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir. 1994) .................................................. 6

15  *Ramirez v. Charter Commc'ns, Inc.*, 75 Cal. App. 5th 365 (2016) .............................................. 18

16  *Ramos v. Superior Court*,  28 Cal. App. 5th 1042 (2018) ........................................................... 18

17  *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63 ............................................................ 4

18  *Roman v. Superior Court*, 172 Cal. App. 4th 1462 (2009) ......................................................... 14

19  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109 (2013) ................................................... 19

20  *Sparks v. Vista Del Mar Child & Family Servs.*, 207 Cal. App. 4th 1511 (2012) ............... 6, 7, 14

21  *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468 (1989) ...................................................................... 5

22                                                          **STATUTES**

23  9 U.S.C. § 2 ..................................................................................................................................... 5

24  9 U.S.C. §§ 1 *et seq* ....................................................................................................................... 4

25

26

27

28

## I.   INTRODUCTION

Defendant RDO Equipment Co.'s motion to compel arbitration should be denied. Neither an express nor an implied agreement to arbitrate exists between Plaintiff and Defendant. Additionally, even if there were an agreement to arbitrate, it cannot be enforced, as it permeates with several procedural and substantively unconscionable clauses. Defendant argues this Court has no power to determine an agreement was formed or whether, if it was formed, it cannot be enforced on unconscionability grounds. In this regard, Defendant claims the AAA arbitration rules that would be applicable to any arbitration delegates such determinations exclusively to the arbitrator. As will be shown, courts – not arbitrators – always have the authority to rule on whether an agreement to arbitrate was formed in the first place. Also, even if an agreement were to exist, this Court has jurisdiction to deem it unenforceable on unconscionability grounds. This is because the agreement has made no clear and unmistakable delegation to the arbitrator to make such rulings. On these multiple grounds that will be developed at length below, Defendant's motion should be denied.

## II.   FACTUAL BACKGROUND

Plaintiff was hired by RDO Equipment Co. ("RDO") on or about July 6, 2021. During his employment, RDO provided Plaintiff with its employee handbooks which Plaintiff electronically acknowledged receipt of. On July 14, 2021, Plaintiff received an electronic copy of RDO's 2021 Handbook and an Acknowledgment of receipt for the 2021 Handbook through RDO's "UKG" platform. The 2021 Handbook was 59 pages. On July 14, 2021, Plaintiff signed into his UKG account and checked "Accept" to acknowledge receipt of the 2021 Handbook. Likewise, Plaintiff received the 2022 Handbook and Acknowledgment on February 1, 2022, in UKG and also checked "Accept" to acknowledge receipt on the same day. The 2022 Handbook was 61 pages.

The 2021 and 2022 Handbooks contain nearly identical arbitration provisions, introductory statements, and nature of employment provisions. In support of its motion, RDO fails to provide full versions of its handbooks. As the language in other sections of the handbooks is relevant to the Court's analysis of RDO's motion, Plaintiff attaches full versions of each handbook as Exhibits 1 (2021 Handbook) and 2 (2022 Handbook) to the Declaration of David Mara, Esq., filed herewith. The Handbook provisions are unilaterally drafted and provided by RDO. The arbitration provision is found

1

at Section 118 of the handbooks and spans three pages. The 2021 and 2022 Acknowledgments are also substantively the same.[1] Hereinafter the 2021 and 2022 versions of the documents will collectively be referred to as the "Handbook" and the "Acknowledgment" unless specified otherwise. The Acknowledgment states:

> **By checking 'Accept?', I acknowledge that I have received my copy** of the Employee Handbook and that it is my responsibility **to read**, understand and comply with the policies and procedures contained herein as **a condition of my employment**. . . .
> **I understand that, except for my employment at-will status, any and all policies and practices may be changed at any time**.
> **I acknowledge that this Handbook provides policies and guidelines, and is not, nor intended to be, a contract of employment nor a legal document.**

(Exhibits B and D to the Declaration of Emily Keeling filed with RDO's motion) (emphasis added).

The Handbook introductory statement dictates, "[t]his handbook is designed to acquaint you with [RDO] and provide you with information about working conditions, team member benefits, and some of the policies affecting your employment." (Exhibit 1 at Bates RDOMUNOZ_000228; Exhibit 2 at Bates RDOMUNOZ_000013). Further, "[RDO] reserves the right to revise, supplement, or rescind any policies or portion of the handbook from time to time, as deemed appropriate, at its sole and absolute discretion." (*Id.*). "Nothing in this Employee Handbook or in any document or statement, written or oral, shall limit the right of employment-at-will." (*Id.*). The Handbook Nature of Employment provision states:

> This handbook is intended to provide team members with a **general understanding** of our employment policies . . .
> It is **not an employment contract** and is **not intended to create contractual obligations of any kind**. . . .
> R.D. Offutt Company reserves the right to change, revise, or eliminate any of the policies and/or benefits described in this handbook, except for its policy of employment-at-will.

(Exhibit 1 at Bates RDOMUNOZ_000229; Exhibit 2 at Bates RDOMUNOZ_000014) (emphasis added). Notably RDO states the Handbook "is not intended to create contractual obligation of any kind." (*Id.*).

---

[1] The only difference being the 2022 Acknowledgment offers the information in English and Spanish, whereas the 2021 Acknowledgment is only in English.

The Handbook arbitration provision is unilaterally drafted and provided by RDO.   The arbitration provision does not require or provide a designated space for specific written acknowledgment.   The arbitration provision states:

> As a condition of employment at [RDO], any controversy or claim arising out of or relating to the employment relationship with [RDO], or the termination of that relationship, must be submitted for non-binding mediation before a neutral third-party, and (if necessary) for final and binding resolution by a private and impartial arbitrator . . . .

(Exhibit 1 at Bates RDOMUNOZ_000232; Exhibit 2 at Bates RDOMUNOZ_000017). However, "**as a prerequisite**" to arbitration, RDO requires:

> . . . good faith efforts **at resolving any dispute internally on an informal basis through [RDO's] management channels appropriate to that particular dispute. . . . If internal efforts fail, a team member can submit an employment dispute for mediation, and if necessary, for final and binding arbitration** under the terms of this procedure.

(Exhibit 1 at Bates RDOMUNOZ_000233; *see also* Exhibit 2 at Bates RDOMUNOZ_000018) (emphasis added).  The arbitration provision covers and "includes, but is not limited to, any claim that could be asserted in court or before an administrative agency or claims for which the team member has an alleged cause of action." (Exhibit 1 at Bates RDOMUNOZ_000232; Exhibit 2 at Bates RDOMUNOZ_000017). However, in the "Claims Not Covered," RDO specifically carves out "[a] **claim by [RDO]** for injunctive or other equitable relief, including without limitation claims for unfair competition and the use or unauthorized disclosure of trade secrets or confidential information, **for which [RDO] may seek** and obtain relief from a court of competent jurisdiction." (Exhibit 1 at Bates RDOMUNOZ_000233; Exhibit 2 at Bates RDOMUNOZ_000018) (emphasis added).  This exception to arbitration is only for RDO.

Arbitration is only allowed "if efforts at informal resolution fail," and "if a covered dispute remains unresolved at the conclusion of the mediation process." (Exhibit 1 at Bates RDOMUNOZ_000233; Exhibit 2 at Bates RDOMUNOZ_000018). Arbitration will be conducted under the terms in RDO's arbitration provision and the AAA rules. "Any conflict between the rules and procedures set forth in the AAA rules and those set forth in [RDO's arbitration provision] shall be resolved in favor of those in [RDO's arbitration provision]." (*Id.*). RDO does not provide the AAA

1   rules; employees can reach out to the Human Resources Department in order to receive a copy of the

2   AAA rules. RDO incorporates an "additional proviso that the [arbitration] Procedure shall be

3   conducted on a confidential basis." (*Id.*).

4          Additionally, "[t]he aggrieved party must give written notice of any claim to the other party **as**

5   **soon as possible after the aggrieved first knew, or should have known, of the facts giving rise to**

6   **the claim**." (Exhibit 1 at Bates RDOMUNOZ_000233; Exhibit 2 at Bates RDOMUNOZ_000018)

7   (emphasis added).  Moreover, "**[a]ny mediation or arbitration** conducted under [RDO's arbitration

8   provision] **shall take place in Fargo, North Dakota**, unless an alternative location is chosen by the

9   mutual agreement of the parties." (Exhibit 1 at Bates RDOMUNOZ_000233; Exhibit 2 at Bates

10  RDOMUNOZ_000019). RDO's arbitration provision also notes, "[RDO] will pay the AAA

11  administrative fees and the arbitrator's fees and expenses. **All other costs and expenses associated**

12  **with the arbitration**, including, without limitation, the party's respective attorneys' fees, shall be

13  borne by the party incurring the expense." (Exhibit 1 at Bates RDOMUNOZ_000234; Exhibit 2 at

14  Bates RDOMUNOZ_000019) (emphasis added).

15  **III.    LEGAL STANDARD**

16         The Federal Arbitration Act ("FAA") governs a motion to compel arbitration. 9 U.S.C. §§ 1 *et*

17  *seq.* "The FAA reflects the fundamental principle that arbitration is a matter of contract. . . . The FAA

18  thereby places arbitration agreements on an equal footing with other contracts, [citation], and requires

19  courts to enforce them according to their terms. . . ." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S.

20  63, 67-68 (2010); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA

21  asks: (1) whether a valid arbitration agreement exists and, if so, (2) whether the agreement

22  encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs. Inc.* (9th Cir. 2004) 363

23  F.3d 1010, 1012.

24         "Arbitration is not a matter of absolute right." *Bodine v. United Aircraft Corp.* (1975) 52 Cal.

25  App. 3d 940, 945. Instead, "[a]rbitration is foremost a creature of contract." *Bunker Hill Park Ltd. v.*

26  *U.S. Bank Nat'l Assn.* (2014) 231 Cal. App. 4th 1315.  As such, a motion to compel arbitration is "'a

27  suit in equity seeking specific performance of that contract. [Citations.] *Engineers Architects Assn. v.*

28  *Community Development Dept.* (1994)  30 Cal. App. 4th 644, 653. Under § 2 of the FAA, arbitration

1  agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

2  for the revocation of any contract." 9 U.S.C. § 2. Thus, whether the parties formed a valid agreement to

3  arbitrate is determined under general California contract law. [Citations.]" *Hotels Nevada v. L.A.*

4  *Pacific Center Inc.* (2012)  203 Cal. App. 4th 336, 348. Hence, an arbitration agreement is not

5  enforceable if it is unconscionable under state law. *Knutson v. Sirius XM Radio Inc*. (9th Cir. 2014)

6  771 F.3d 559, 565; *see also Pokorny v. Quixtar* (9th Cir. 2010) 601 F.3d 987, 994.

7        RDO mistakenly argues issues about formation and arbitrability are exclusively for the

8  arbitrator to decide because RDO allegedly has a clear and unmistakable delegation clause. The

9  Supreme Court clarified that **contract-formation** issues are **always** matters for **judicial resolution**

10  even in the presence of a delegation clause. That principle follows from the fundamental premise that

11  arbitration is "strictly a matter of consent." *Granite Rock Company v. International Brotherhood of*

12  *Teamsters*, 561 U.S. 287, 297, 299 (2010) (emphasis added); *see also Caremark, LLC v. Chickasaw*

13  *Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). The "question of **arbitrability,**" i.e., whether the

14  agreement can be enforced, is "an issue for **judicial determination** [u]nless the parties clearly and

15  unmistakably provide otherwise." *AT&T Technologies, Inc. v. Communications Workers* 475 U.S.

16  648, 649 (1986) (emphasis added).  RDO does not have a clear and unmistakable delegation clause.

17        As discussed below, in the present case: (1) an agreement to arbitrate was not formed; (2) even

18  if an arbitration agreement is assumed, there is not a clear and unmistakable delegation clause to the

19  arbitrator to resolve arbitrable issues; and (3) RDO's arbitration agreement permeates with

20  unconscionable terms and is unenforceable.

21  **IV.    FORMATION - THERE IS NO EXPRESS OR IMPLIED AGREEMENT TO ARBITRATE PLAINTIFF'S CLAIMS**

22        This Court has jurisdiction to determine the express or implied formation of an arbitration

23  agreement because formation issues are always for judicial determination *Granite Rock*, *supra*, 561

24  U.S. at 297, 299.  Under the FAA, arbitration "is a matter of consent, not coercion." *Volt Info. Scis. v.*

25  *Bd. of Trs.*, 489 U.S. 468, 479 (1989). Generally, agreements to arbitrate must be express and in

26  writing; however, acceptance may also be implied in fact. *Pinnacle Museum Tower Ass'n v. Pinnacle*

27  *Mkt. Dev. (US) LLC*, 55 Cal. 4th 223, 236 (2012); *Mendoza*, *supra*, 75 Cal. App. 5th at 777. RDO

28  argues an express agreement to arbitrate was formed because Plaintiff acknowledged receipt of the

1  Handbook, which contained the arbitration provision. Alternatively, RDO argues an arbitration

2  agreement was implied in fact given Plaintiff received the Handbook and Plaintiff continued to work

3  for RDO. As discussed below there is no evidence there was an express or implied in fact agreement.

4  **A. An Express Agreement to Arbitrate Does Not Exist**

5  Plaintiff did not contract to an arbitration agreement by acknowledging receipt of RDO's

6  Employee Handbook. The Acknowledgment made no reference to the arbitration provision and

7  expressly depicted the Handbook as a non-legal document. Moreover, the lengthy Handbook was also

8  explicitly noncontractual and merely contained the buried arbitration provisions. The Ninth Circuit

9  has routinely found there must be "at least a knowing agreement to arbitrate employment disputes

10  before an employee may be deemed to have waived" the right to a judicial forum. *Prudential Ins. Co.*

11  *of Am. v. Lai*, 42 F.3d 1299, 1304 (9th Cir. 1994); *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d

12  756, 761-62 (9th Cir. 1997); *Kummetz v. Tech Mold*, 152 F.3d 1153, 1155-56 (9th Cir. 1998). A

13  knowing agreement to arbitrate is formed when it is "express: the choice must be explicitly presented

14  to the employee and the employee must explicitly agree to waive the right [to a judicial forum]."

15  *Nelson*, *supra*, 119 F.3d at 761-62; *Kummetz*, *supra*, 152 F.3d at 1155-56. An employee does not agree

16  to arbitrate employment-related claims by acknowledging receipt of an employee handbook where the

17  acknowledgment does not specifically reference the arbitration clause in the handbook. *Nelson*, *supra*,

18  119 F.3d at 761-62; *Kummetz*, *supra*, 152 F.3d at 1155-56; *Sparks v. Vista Del Mar Child & Family*

19  *Servs.*, 207 Cal. App. 4th 1511, 1520-22 (2012).

20  In *Nelson*, the court found no agreement to arbitrate when an employee merely signed a

21  handbook acknowledgment of receipt. *Nelson*, *supra*, 119 F.3d at 761-62. While the handbook

22  contained an arbitration provision, the acknowledgment did not notify the employee of the arbitration

23  clause or that accepting the handbook would waive his right to a judicial forum. *Id.* at 761. The waiver

24  of a judicial forum needed to be express in the acknowledgment; the express terms of the

25  acknowledgment only instructed the employee to "read and understand" the handbook. *Id.* at 761-62.

26  Further the acknowledgment indicated the opposite of being a binding arbitration agreement; the

27  acknowledgment characterized the handbook as a "'guideline' to the company's unilaterally

28  promulgated policies and procedures." *Id.* Thus, "[m]erely signing the form did not in any way

6

1   constitute a 'knowing agreement to arbitrate,' and thereby to surrender [employee's] statutory right to

2   a judicial forum." *Id.*

3       Following the precedent in *Nelson*, the Ninth Circuit in *Kummetz* found no arbitration

4   agreement where an employee only signed an acknowledgment which made no reference to the

5   handbook arbitration provision. *Kummetz*, *supra*, 152 F.3d at 1155-56. In *Kummetz*, the employee read

6   the handbook and signed the acknowledgment which stated the employee "agreed to the matters set

7   forth in [the handbook]." *Id.* at 1155. However, the acknowledgment had "no *explicit* reference to

8   arbitration or waiver of right to sue." *Id.* (emphasis in original).   Rather, the acknowledgment

9   contained language "negating the idea that the booklet amounted to or included a contractual

10  agreement." *Id.* The acknowledgment stated the handbook "in no way constitutes an employment

11  contract and that [the employee shall] remain an at-will employee." *Id.* Further, the employer retained

12  authority to unilaterally change the handbook policies. *Id.* "The clear implication of these clauses is

13  that the [handbook] contained a set of non-contractual policies unilaterally established by [the

14  employer]." *Id.* Thus, "because the [a]cknowledgement failed to alert [the employee] to the fact that

15  the [handbook] contained an arbitration clause, the presence of the clause in the [handbook] is

16  insufficient under *Nelson* to effect a waiver." *Id.*

17      Additionally, the California Court of Appeals relied on *Nelson* and *Kummetz* in *Sparks*. *Sparks*

18  *v. Vista Del Mar Child & Family Servs.*, 207 Cal. App. 4th 1511, 1520-22 (2012). In *Sparks*, an

19  employee received a lengthy handbook which contained a buried and indistinguishable arbitration

20  provision. *Id*. at 1519, 1522. While the employee signed the handbook acknowledgment of receipt,

21  the acknowledgment made no reference to arbitration and expressly stated it was not a contract of

22  employment. *Id.* at 1522. *Id.* Following *Nelson* and *Kummetz*, the court concluded, at minimum, there

23  needs to be specific reference to the duty to arbitrate in the signed acknowledgment; a boilerplate

24  arbitration clause buried in the handbook is not enough to deprive an employee of their right to a

25  judicial forum. *Id.* at 1520-22; *see also Mendoza*, *supra*, 75 Cal. App. 5th at 784-86 (following *Sparks*

26  and finding no express agreement where: (1) the handbook merely presented as a guide; (2) the

27  employer could unilaterally change the handbook policies, except employment at-will; (3) the

28  handbook and acknowledgment were explicitly non-contractual; (4) plaintiff only accepted an

acknowledgment which did not mention the handbook arbitration provision).

The facts here are nearly identical to the authority cited above.  RDO claims there is an enforceable arbitration agreement because its Handbook contained an arbitration provision and Plaintiff checked "Accept" to acknowledge receipt of the Handbook. As in *Nelson*, *Kummetz*, *Sparks* and *Mendoza*, the Acknowledgment makes no reference to the arbitration provision and thus does not constitute an agreement to arbitrate.  Moreover, like *Nelson*, *Kummetz*, *Sparks* and *Mendoza*, the explicit language of the Acknowledgment and Handbook negates the notion of any agreement being formed.  The Acknowledgment states, "this Handbook provides policies and guidelines, and is ***not nor intended to be***, a contract of employment nor a legal document." (emphasis added). The Handbook itself also states, "[t]his handbook is intended to provide team members with a general understanding of our employment policies. . . . ***It is not an employment contract and is not intended to create contractual obligations of any kind.***" (emphasis added). Further, the Acknowledgment dictates, "except for [Plaintiff's] employment at-will status, any and all policies and practices may be changed at any time." The Handbook reiterates this, "[RDO] reserves the right to change, revise, or eliminate any of the policies and/or benefits described in this handbook, except for its policy of employment-at-will."  Following the cited authority, this direct language indicates the opposite of an agreement to arbitrate.

Similar to the facts in *Esparza v. Sand & Sea, Inc.*, the Acknowledgment notes that the Plaintiff had not read the handbook at the time he accepted the Acknowledgment. RDO does not instruct employees to read the Handbook ***before*** accepting the Acknowledgment. Rather, by checking "Accept" employees only acknowledge that they have received the Handbook and will read it. The Acknowledgment merely states it is employee's responsibility to eventually read the Handbook. On similar facts, the California Court of Appeal in *Esparza* found that no agreement to arbitrate existed:

> The employee handbook containing the arbitration provision included a welcome letter as the first page, which stated, "[T]his handbook is not intended to be a contract (express or implied), nor is it intended to otherwise create any legally enforceable obligations on the part of the Company or its employees." The employee signed a form acknowledging she had received the handbook, which mentioned the arbitration provision as one of the "policies, practices, and procedures" of the company. The acknowledgement form did not state that the

employee agreed to the arbitration provision, and expressly recognized that the employee had not read the handbook at the time she signed the form. Under these circumstances, we find that the arbitration provision in the employee handbook did not create an enforceable agreement to arbitrate.

*Esparza v. Sand & Sea, Inc.*, 2 Cal.App.5th 781, 783 (2016).

Moreover, like *Sparks* and *Mendoza*, the arbitration provision is buried within the lengthy Handbook and is not distinguishable from the other provisions.[2]

Thus, following these cases, Plaintiff did not agree to arbitration and waive his right to a judicial forum. RDO's Acknowledgment does not make any reference to the buried arbitration provision and the explicit language dictates RDO's Handbook is not a legal contract of any kind.

## B.  An Implied Agreement to Arbitrate is Not Present

To the extent that RDO argues that Plaintiff's continued employment constitutes assent to the arbitration agreement, this argument must fail. The defendant in *Mendoza v. Trans. Valley Transport* made the same argument. There, the court states, "[e]mployers argue that the parties entered into an implied-in-fact agreement to arbitrate. Employers contend that Mendoza assented to arbitration because he received a copy of the Handbook, which contains an Arbitration Policy, and worked for FTU after he received it. *Mitri*,[3] *Ajamian*,[4] and *Esparza* all rejected this argument." *Mendoza, supra*, 75 Cal.App.5th at 788. *Mendoza* is analogous and instructive here and, under it, no implied agreement to arbitrate exists.

RDO relies on the following language in its arbitration agreement to assert that an implied agreement to arbitrate exists: "As a condition of employment at [RDO], any controversy or claim arising out of or relating to the employment relationship with [RDO], or the termination of that relationship, must be submitted for non-binding mediation before a neutral third-party, and (if necessary) for final and binding resolution by a private and impartial arbitrator[.]" (Exhibit 1 at Bates RDOMUNOZ_000232; Exhibit 2 at Bates RDOMUNOZ_000017). The arbitration provision appears

---

[2] The 2021 Handbook is 59 pages; the 2022 Handbook is 61 pages. The Handbooks both contain over 50 unique provisions. The arbitration provision is found at section 118 of the Handbooks. Like every other provision, the arbitration provision heading is only marked with bold font. The arbitration provision is indistinguishable from the other provisions; its format is the same as the other provisions in the Handbooks.
[3] The full cite to this case is *Mitri v. Arnel Management Co.*, 157 Cal.App.4th 1164 (2007).
[4] The full cite to this case is *Ajamian v. CantorCO2e, L.P.*, 203 Cal.App.4th 771 (2012).

1    at section 118 of the Handbooks and begins on page eight and is three pages long.

2       In *Mendoza*, "[t]he following statement appeared at the top of page 2 of the Handbook: '**THE**

3    **POLICIES BELOW ARE A CONDITION OF EMPLOYMENT WITH THE COMPANY**'

4    (original boldface and underscoring). That statement is followed by several sections with the following

5    headings: . . . '**Binding Arbitration Policy**' (Arbitration Policy). . . (original boldface and

6    underscoring)." *Mendoza*, *supra*, 75 Cal. App. 5th at 755. In addition, the arbitration policy in

7    *Mendoza* "concluded with the following language in all caps: 'EMPLOYEE UNDERSTANDS BY

8    BEING EMPLOYED BY THE COMPANY, AS A CONDITION OF EMPLOYMENT, THE

9    EMPLOYEE [*sic*] AGREES TO THIS BINDING ARBITRATION POLICY, WHICH MEANS THE

10    EMPLOYEE AND THE COMPANY BOTH GIVE UP RIGHTS TO TRIAL BY JURY AND

11    RIGHTS TO PARTICIPATE IN CLASS ACTION CLAIMS." *Id.* at 756.

12       Despite this language, the *Mendoza* court found there was no implied agreement to arbitrate.

13    In rejecting that an implied agreement to arbitrate exists, the *Mendoza* court states:

14
15
16
17
18
19
20
> Employers do not cite any cases that support the assertion that by referring to arbitration as a "condition of employment," the parties entered into a binding agreement to arbitrate. And they do not brief the effect of designating one or more of FTU's policies a "condition of employment." Notably, the Handbook stated twice that "all terms and conditions of your employment may be changed or withdrawn at company's unrestricted option at any time, with or without good cause." The Second Acknowledgment did not distinguish between "conditions of employment" and other policies and rules, lumping them all together in a single sentence, which stated: "In consideration of my employment, I hereby agree to read, observe, and abide by the conditions of employment, policies and rules contained in this Handbook."

21       Similar language is found in RDO's handbook. RDO's Acknowledgment states, "It is not an

22    employment contract and is not intended to create contractual obligations of any kind. . . .**[RDO]**

23    **reserves the right to change, revise, or eliminate any of the policies and/or benefits described in**

24    **this handbook**, except for its policy of employment-at-will." (Exhibit 1 at Bates

25    RDOMUNOZ_000228; Exhibit 2 at Bates RDOMUNOZ_000013) (emphasis added); *see also*

26    (Exhibits B and D to the Declaration of Emily Keeling filed with RDO's motion ("I understand that,

27    except for my employment at-will status, any and all policies and practices may be changed at any

28    time.")). Moreover, the language in RDO's Handbooks is even more obscured than in *Mendoza*. In

*Mendoza*, the relevant language was in capital, underscored, and/or boldface print. Here, the relevant language is not in capital letters, boldfaced, or otherwise called out like the language in *Mendoza.*

In rejecting that an implied in fact agreement exists, the *Mendoza* court notes, "[t]he only case to apply the implied-in-fact contract theory to an arbitration agreement in an employee handbook was *Harris, supra, 248 Cal.App.4th at pages 383–384*. But the court did so after it had already concluded that the parties had entered into an express agreement to arbitrate. The court relied on language in the handbook that expressly addressed the effect of the employee's failure to execute the written arbitration agreement in the handbook and provided that upon commencing the employment, the employee was deemed to have consented to arbitration." *Mendoza*, *supra*, 75 Cal. App. 5th at 790. The *Mendoza* court concludes, "we reject Employers' contention that Mendoza entered into an implied-in-fact agreement to arbitrate by simply receiving a copy of the Handbook and working for FTU." *Id.* at 791. Here, too, the Court should find that no implied agreement to arbitrate exists.

## V.   ARBITRABILITY - THERE IS NO CLEAR AND UNMISTAKABLE DELEGATION CLAUSE AND THEREFORE THIS COURT HAS THE POWER TO DETERMINE WHETHER THE ARBITRATION PROVISION IS ENFORCEABLE

Assuming, arguendo, an arbitration agreement was formed, it remains unenforceable as it is massively unconscionable. RDO argues that this Court does not have the power to deem the agreement unenforceable as unconscionable, claiming that it has delegated that power exclusively to the arbitrator. For this to be correct, the arbitration provision must have a clear and unmistakable statement delegating this power to the arbitrator. *AT&T Technologies*, *supra*, 475 U.S. at 649. The arbitration provision here, however, does not have a clear and unmistakable delegation clause. RDO claims the AAA rules that it does not provide to employees contains the delegation clause, which states  "the arbitrator shall have the power to rule on [their] jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Defendant's Motion to Compel Arbitration at 3:22-27. RDO also relies on language in its arbitration provisions that has previously been found *not* to be clear and unmistakable.

Courts have rejected the claim that the AAA rules contain a valid delegation clause and. As such, this Court, not the arbitrator, can determine whether the agreement is enforceable. This is so for

11

two reasons. Where, arbitration is not the exclusive means of resolution, the AAA rules cannot and do not divest the Court of the power to determine whether the arbitration provision is enforceable. *Best Sunshine Int'l, LTD Bvi v. Commonwealth Casino Comm'n*, 2023 U.S. App. LEXIS 16315, 4-5 (9th Cir. June 28, 2023) (where binding arbitration is not the "exclusive process" for resolving disputes under the agreement, the arbitrator does not have the exclusive power to rule on whether the agreement to arbitrate is enforceable and courts are free to make such determinations). In the arbitration provision here, however, arbitration is far from the "exclusive" dispute resolution forum. Rather, multiple resolution proceedings are contemplated, as an employee must first try and resolve disputes through informal resolution and then mediation before an arbitration can be initiated. Thus, like *Best Sunshine*, the Court has the power to determine whether the agreement is enforceable.[5]

Furthermore, the AAA rule RDO relies on here cannot constitute a clear and unmistakable delegation to the arbitrator even if arbitration were the exclusive means of dispute resolution. As one court recently noted:

> [W]e seriously question how [incorporation of the AAA rules] provides clear and unmistakable evidence that an employer and an employee intended to submit the issue of the unconscionability of the arbitration provision to the arbitrator, as opposed to the court. There are many reasons for stating that the arbitration will proceed by particular rules, and doing so does not indicate that the parties' motivation was to announce who would decide threshold issues of enforceability. Moreover, the reference to AAA rules does not give an employee, confronted with an agreement she is asked to sign in order to obtain or keep employment, much of a clue that she is giving up her usual right to have the court decide whether the arbitration provision is enforceable. Assuming that an employee reads the arbitration provision in the proposed agreement, notes that disputes will be resolved by arbitration according to AAA rules, and even has the wherewithal and diligence to track down those rules, examine them, and focus on the particular rule to which appellants now point, the rule merely states that the arbitrator shall have 'the power' to determine issues of its own jurisdiction, including the existence, scope and validity of the arbitration agreement. This tells the reader almost nothing, since a

---

[5] Defendant relies on *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) for its argument that the arbitrator has the exclusive power to rule on enforceability issues. *Brennan*, however, was contrasted and distinguished by the Ninth Circuit in *Best Sunshine*. Unlike *Best Sunshine*, the arbitration agreement in *Brennan was* the exclusive means of dispute resolution and thus, under its delegation clause, the arbitrator had the exclusive authority to rule on enforceability issues.  RDO also cites to *Harmon v. RDO Equip. Co.*, No. EDCV 18-02602JVS(KKx), 2019 U.S. Dist. LEXIS 166029 (C.D. Cal. July 3, 2019), where RDO raised the same arbitrability argument. However, the court in *Harmon* only mandated arbitration because the plaintiff did not specifically challenge RDO's alleged delegation to arbitrate.

court also has power to decide such issues, and nothing in the AAA rules states that the AAA arbitrator, as opposed to the court, shall determine those threshold issues, or has exclusive authority to do so, particularly if litigation has already been commenced."

*Beco v. Fast Auto Loans, Inc.*, 86 Cal. App. 5th 292, 303-06 (2022) (quoting *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 790 (2012)).

RDO also relies on the following language in its Handbook: "Claims Covered: This agreement to submit to mediation and (if necessary) arbitration: [¶] Covers any dispute concerning the ability to arbitrate any such controversy or claim" to assert that the Parties' agreed to a delegation clause. (Exhibit 1 at Bates RDOMUNOZ_000232; Exhibit 2 at Bates RDOMUNOZ_000017). The agreement in *Beco* included nearly identical language: "Immediately following, paragraph 1, subparagraph a, of the Claims Covered provision, states: '[The] agreement to submit to mediation and (if necessary) arbitration: [¶] … Covers any dispute concerning the arbitrability of any such controversy or claim. …'" *Beco*, *supra*, 86 Cal. App. 5th at 303. In *Beco*, the employer argued that this amounted to a clear and unmistakable delegation clause. The *Beco* court disagreed stating, "The language of this provision is, at best, ambiguous – 'any dispute concerning the arbitrability of any such controversy or claim' could very easily be read to mean a specific *substantive* dispute or claim, not the issue of who decides whether the entire agreement is enforceable or unconscionable. This is particularly true given the context the 'Claims Covered' and the 'Claims Not Covered' language immediately following the general arbitration provision." *Id.* at 303. Here, too, the Court should find that this language is not clear and unmistakable.

Thus, nothing in the agreement nor the AAA rules divests this Court of jurisdiction to determine whether the agreement is enforceable under unconscionability grounds.

## VI.   RDO'S ARBITRATION PROVISION IS UNENFORCEABLE BECAUSE IT IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE

Even if an agreement to arbitrate were assumed, RDO's arbitration provision is permeated with unconscionability and is unenforceable. As discussed above, this Court has standing to rule on the unconscionability of the terms of this arbitration provision given there is no clear delegation agreement. Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Baltazar v.*

13

1   *Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016). There are two elements of unconscionability,

2   procedural and substantive unconscionability. *Id.* Procedural unconscionability "focus[es] on

3   oppression or surprise due to unequal bargaining power." *Id.* Substantive unconscionability focuses

4   on "overly harsh or one-sided results." *Id.* For an arbitration agreement to be unenforceable, both

5   procedural and substantive unconscionability need to be present, but not to the same degree. *Id.* A

6   sliding scale is invoked; "the more substantively oppressive the contract term, the less evidence of

7   procedural unconscionability is required to come to the conclusion that the term is unenforceable, and

8   vice versa." *Id*. at 1244. "The ultimate issue in every case is whether the terms of the contract are

9   sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement."

10   *Id.* at 1245.

11         **A.  RDO's Arbitration Provision is Procedurally Unconscionable**

12         RDO's arbitration provision is procedurally unconscionable because it is offered on an

13   oppressive take-it-or-leave-it basis and contains hidden terms. In California, the mere presence of an

14   adhesion contract renders its terms procedurally unconscionable due to oppression *De Leon v.*

15   *Pinnacle Prop. Mgmt. Servs., LLC*, 72 Cal. App. 5th 476, 485 (2021); *Baltazar*, *supra*, 62 Cal. 4th at

16   1244.  An arbitration provision hidden in a lengthy document that does not require specific written

17   acknowledgment contains a high degree of procedural unconscionability. *Roman v. Superior Court*,

18   172 Cal. App. 4th 1462, 1471 (2009) (citing *Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1252-

19   53 (2006)). Failing to provide a copy of the arbitration rules an employee would be bound by is

20   procedurally unconscionable. *Najarro v. Superior Court*, 70 Cal. App. 5th 871, 885 (2021); *Sparks*,

21   *supra*, 207 Cal. App. 4th at 1523 (finding procedural unconscionability because the arbitration

22   provision incorporated but did not provide the AAA rules). Here, following *De Leon* and *Baltazar*,

23   RDO's arbitration provision is oppressive and procedurally unconscionable because RDO unilaterally

24   drafted and offered it as an adhesion contract. Plaintiff was required as a condition of employment to

25   acknowledge receipt of the Handbook. Further, like *Higgins*, the arbitration provision is buried in

26   RDO's lengthy Handbook (59 pages in 2021 and 61 pages in 2022); the arbitration provision was

27   indistinct;[6] and Plaintiff did not have to specifically consent specifically to the arbitration provision in

28   ───────────────────
   [6] The 2021 and 2022 Handbooks both contain over 50 unique provisions. The arbitration provisions

1  writing. Moreover, like *Sparks*, RDO's arbitration provision incorporates but does not provide the

2  AAA rules. RDO's arbitration provision is an adhesion contract with hidden and surprising terms.

3  **B.  RDO's Arbitration Provision is Substantively Unconscionable**

4  An arbitration agreement is substantively unconscionable when the agreement is "'one-sided'

5  in favor of the employer without substantial justification." *De Leon*, *supra*, 72 Cal. App. 5th at 486.

6  To evaluate substantive unconscionability courts often look at whether the arbitration agreement meets

7  minimum levels of fairness. *Id.*  At minimum, a mandatory employment arbitration agreement must:

8         (1) provide for neutral arbitrators, (2) provide for more than minimal discovery, (3)
9         require a written award that permits limited judicial review, (4) provide for all of
       the types of relief that would otherwise be available in court, and (5) require the
10         employer to pay the arbitrator's fees and all costs unique to arbitration.

11  *Id.* (citing *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 102 (2000)).

12  An arbitration agreement is substantively unconscionable if it eliminates or interferes with any of these

13  basic provisions. *De Leon*, *supra*, 72 Cal. App. 5th at 486. Ultimately, RDO's arbitration provision is

14  substantively unconscionable for the following terms: (1) non-mutuality; (2) employer-controlled

15  dispute resolution; (3) discovery limitations; (4) confidential arbitration; (5) requiring employees to

16  cover attorney fees; (6) default out-of-state arbitration; (7) overly restrictive time limitations; (8) and

17  a Berman waiver.

18  **i.  RDO's Arbitration Provision Lacks Mutuality**

19  Mutuality is the paramount consideration of an arbitration agreement. *Davis v. Kozak*, 53 Cal.

20  App. 5th 897, 914 (2020). Arbitration agreements lack mutuality if they are not signed by the

21  employees. *Najarro*, *supra*, 70 Cal. App. 5th at 883. Arbitration agreements that require employees to

22  arbitrate claims but exclude the employer's injunctive or other equitable relief claims for unfair

23  competition, unauthorized disclosure of trade secrets, or confidential information, are one-sided and

24  unconscionable. *Armendariz*, 24 Cal 4th at 120; *Martinez v. Master Protection Corp.*, 118 Cal. App.

25  4th 107, 114-15 (2004); *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175-176 (2002). RDO's

26  arbitration provision lacks mutuality and is one-sided in favor of RDO.  Similar to *Najarro*, Plaintiff

27

28  and formatting are nearly identical for both years.  Like every other provision, the arbitration provision heading is only marked with bold font.  The arbitration provision is indistinguishable; its format is exactly the same as the many other provisions in the Handbooks.

1 did not sign the arbitration provision itself. Moreover, RDO has an identical employer carve-out to

2 *Armendariz*, *Martinez*, and *Mercuro*; "[RDO claims] for injunctive or other equitable relief, including

3 without limitation claims for unfair competition and the use or unauthorized disclosure of trade secrets

4 or confidential information, for which [RDO] may seek and obtain relief from a court of competent

5 jurisdiction." Meanwhile, RDO delegates employees to arbitrate all claims that arise or relate to

6 employment; this is a one-sided exception which allows RDO to choose its forum for claims it would

7 most likely bring against its employees.

8 **ii.   RDO Delegates Plaintiff to Employer-Controlled Dispute Resolution**

9 An arbitration provision which requires an employee to first submit their claims to informal

10 employer-controlled dispute resolution before neutral arbitration is substantively unconscionable.

11 *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1282-83 (2004). Requiring such informal

12 internal resolution "suggests that defendant would receive a 'free peek' at plaintiff's case, thereby

13 obtaining an advantage if and when plaintiff were to later demand arbitration." *Id.* The RDO arbitration

14 provision is substantively unconscionable because it requires Plaintiff to submit to informal employer-

15 controlled dispute resolution.  Like *Nyulassy*, RDO requires employees first "resolv[e] any dispute

16 internally on an informal basis through [RDO's] management channels appropriate to that particular

17 dispute."  This impermissibly gives RDO a "free peek" and advantage over its employees.   RDO's

18 arbitration provision is even more burdensome given Plaintiff must go through RDO's internal

19 resolution and then non-binding mediation before binding arbitration is allowed. Following *Nyuslassy*,

20 RDO's delegation to informal internal resolution is substantively unconscionable.

21 **iii.   RDO Impermissibly Limits Discovery**

22 Although arbitration agreements may agree to limitations on discovery, they must still ensure

23 minimum standards of fairness so employees can vindicate their public rights. *De Leon*, *supra*, 72 Cal.

24 App. 5th at 487. Leaving the discretion of discovery in the hands of the arbitrator is incongruent with

25 the minimal levels of fairness. *Beco*, *supra*, 86 Cal. 5th at 312. The *Beco* arbitration agreement

26 stated, "[t]he arbitrator shall have the authority to allow for appropriate discovery and exchange of

27 information before a hearing, including but not limited to production of documents, information

28 requests, depositions, and subpoenas." *Id.* at 311-12. The court determined the arbitrator was given

1  complete discretion over discovery which was substantively unconscionable. *Id.*

2  Excluding key discovery devices is substantively unconscionable. *See Mills v. Facility Sols.*

3  *Grp., Inc.*, 84 Cal. App. 5th 1035 (2022). The arbitration agreement was substantively unconscionable

4  when it allowed for depositions, designation of expert witnesses, and subpoenas, but did not expressly

5  allow for document requests, requests for admissions, or interrogatories. *Id.* While defendant's

6  arbitration agreement incorporated the AAA arbitration rules, the court followed the discovery

7  provision in the agreement given it was distinct. *Id.* at 1045, 1059.

8  RDO's discovery clause is substantively unconscionable because it does not expressly provide

9  key discovery devices and leaves the discovery determination completely to the arbitrator. RDO's

10  discovery provision is identical to *Beco* and states, "[t]he arbitrator shall have the authority to allow

11  for appropriate discovery and exchange of information before a hearing, including (but not limited to)

12  production of documents, information requests, depositions, and subpoenas." Like *Beco*, the plain

13  language of this limitation grants the arbitrator absolute control over discovery, which does not meet

14  the minimal levels of fairness. While the RDO agreement does state the AAA rules will be

15  incorporated, as in *Mills*, RDO includes a separate discovery limitation which is distinct from the AAA

16  rules. Moreover, RDO's arbitration provision clarifies the specific rules set out in the RDO provision

17  will be favored over the AAA rules if they differ. Further, as in *Mills*, the RDO discovery limitation

18  does not expressly provide for key discovery devices such as requests for admissions and

19  interrogatories.

20  ### iv.   RDO Requires Confidential Arbitration

21  RDO's clause requiring confidential arbitration is unreasonably one-sided in favor of RDO

22  and is substantively unconscionable. Provisions requiring confidential arbitrations are substantively

23  unconscionable for the following reasons: (1) prevents employees from informally gathering evidence

24  to present their case; (2) unnecessarily increases the cost of formal discovery; (3) defeats the purpose

25  of arbitration as simpler, more efficient forum for resolving disputes; (4) unreasonably favors

26  employers to the detriment of employees seeking to vindicate their unwaivable statutory rights; and

27  (5) may discourage employees from filing employer discrimination cases. *Ramos v. Superior Court*,

28  28 Cal. App. 5th 1042, 1066-67 (2018). Following *Ramos*, RDO's arbitration provision is

substantively unconscionable because it requires confidentiality; arbitration "shall be conducted on a confidential basis."

### v. Plaintiff is Subject to Attorney Fees He would Otherwise be Entitled to in a Judicial Forum

An arbitration agreement violates the basic levels of fairness if it requires an employee to cover costs unique to arbitration. *De Leon*, *supra*, 72 Cal. App. 5th at 486. An arbitration provision that denies an employee their statutory right to recover attorney fees is substantively unconscionable. *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 250-251 (2016) (finding substantive unconscionability where each side was "responsible for [their] own attorneys' fees," even when it was statutorily recoverable); *Ramirez v. Charter Commc'ns, Inc.*, 75 Cal. App. 5th 365, 376 n.6 (2016) (the provision: "including without limitation each party's attorneys' fees, will be borne by the party incurring the costs, fees and expenses," deprived the employee of their statutory right to recover attorney fees[7]). Like *Carbajal* and *Ramirez*, the RDO arbitration provision is substantively unconscionable because it denies employees their statutory right to attorney fees. The RDO provision is nearly identical to *Ramirez*; "RDO will pay the AAA administrative fees and the arbitrator's fees and expenses. All other costs and expenses associated with the arbitration, including, without limitation, the party's respective attorneys' fees, shall be borne by the party incurring the expense."

### vi. RDO requires out-of-state arbitration

Requiring out-of-state arbitration bears upon substantive unconscionability given it is outside the reasonable expectation of the non-drafting party and likely denies the non-drafting party a hearing. *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1665-67 (1993) (requiring California employees to arbitrate claims in Minnesota unless the parties agreed otherwise is substantively unconscionable)*; see also Murrey v. Superior Court*, 87 Cal. App. 5th 1223, 1247 (2023) (finding a provision requiring arbitration in Northern California for a Southern California employee, unless the parties agreed otherwise, evidenced substantive and procedural unconscionability). RDO's arbitration provision is substantively unconscionable because it requires Plaintiff, a California employee, to arbitrate his claims in North Dakota, unless an alternative location is chosen by the mutual agreement

---

[7] The court could not definitively state the provision was substantively unconscionable because neither party raised the issue. *Ramirez*, *supra*, Cal. App. 5th at 376 n.6.

of the parties. Thus, following *Murrey* and *Patterson*, this arbitration procedure is substantively unconscionable.

### vii.   RDO Places Impermissible Time Limitations

Arbitration provisions that place more restrictive limitations periods than are offered in law are substantively unconscionable. *See De Leon*, *supra*, 72 Cal. App. 4th at 486-87 (finding substantive unconscionability where the employer shortened the time limitations for all claims to one year and plaintiff's California Labor Code claims offered longer periods). RDO states, employees must "give written notice of any claim as soon as possible after the [employee] first knew, or should have known, of the facts giving rise to the claim." Similar to *De Leon*, the "as soon as possible" limitation is not consistent with the statute of limitations afforded in law and does not provide Plaintiff with an adequate or clear time frame in which they have to pursue their claims. Thus, RDO's time limitation is substantively unconscionable.

### viii.   RDO's Arbitration Provision Waives a Right to a Berman Hearing

Berman hearings include various features to lower the costs and risks for employees pursuing wage claims.[8] *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1146 (2013). Berman waivers are substantively unconscionable when an employer "does not provide an employee with an accessible and affordable arbitral forum for resolving wage disputes." *Id.*; *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 130 (2019). RDO's provision contains a clear waiver of Plaintiff's right to an administrative Berman hearing; RDO employees waive "any claim that could be asserted . . . before an administrative agency" as a condition of employment. *Sonic* and *OTO* instruct that Berman waivers are substantively unconscionable when an accessible and affordable arbitral forum is not provided to an employee. RDO does not provide an accessible or affordable arbitral forum: (1) RDO requires a hearing in North Dakota for its California employees; (2) employees cannot immediately arbitrate their claims and need to go through RDO's dispute resolution process; (3) RDO requires employees to take on unique arbitration costs; and (4) RDO's required confidentiality greatly increases the cost and burden on

---

[8] These include: procedural informality, assistance of a translator, use of an expert adjudicator who is authorized to help the parties by questioning witnesses and explaining issues and terms, and provisions on fee shifting, mandatory undertaking, and assistance of the Labor Commissioner as counsel to help employees defend and enforce any award on appeal. *Sonic*, *supra*, 57 Cal. 4th at 1146.

employees.

### C. RDO's Arbitration Provision is Permeated With Unconscionability and is Unenforceable

An arbitration agreement is unenforceable, not severable, when it is "permeated by unconscionability. *De Leon*, *supra*, 72 Cal. App. 5th at 492. An agreement to arbitrate is considered "permeated" by unconscionability when it contains more than one unconscionable provision. *Id.* The court could refuse to enforce an arbitration agreement with only one unconscionable provision if it was the product of bad faith. *Id.* at 493.

> The overarching inquiry is whether "'the interests of justice … would be furthered'" by severance." "An employer will not be deterred from routinely inserting … a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter."

*Id.* (quoting *Armendariz*, *supra*, 24 Cal.4th at 124-125, n.13).

Here, RDO's arbitration clause is permeated with unconscionability given there is procedural unconscionability and a plethora of substantively unconscionable provisions. RDO's arbitration provision contains a significant amount procedural unconscionability because it is an oppressive take-it-or-leave-it offer with hidden terms. The arbitration clause also contains a great deal of substantive unconscionability, including: (1) non-mutuality; (2) employer-controlled dispute resolution; (3) discovery limitations; (4) confidential arbitration; (5) requiring employees to cover attorney fees; (6) default out-of-state arbitration; (7) overly restrictive time limitations; (8) and a Berman waiver. The interests of justice indicate severability would be insufficient. The RDO arbitration clause is permeated with many unconscionable provisions and should be void.

### VII.    CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the court deny RDO's Motion to Compel Individual Arbitration and declare RDO's arbitration provision unenforceable.

Dated:    July 24, 2023                             **MARA LAW FIRM, PC**

                                         /s/ *David Mara*
                                        David Mara, Esq.
                                        Jill Vecchi, Esq.
                                        Representing Plaintiff SIMON MUNOZ