UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON MUNOZ,<br><br>                Plaintiff,<br><br>    v.<br><br>RDO EQUIPMENT CO.,<br><br>                Defendant. | No. 1:23-cv-00979-DAD-AC<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>(Doc. No. 9) |

This matter is before the court on defendant's July 10, 2023 motion to compel arbitration and to dismiss plaintiff's first amended complaint. (Doc. No. 9.) On July 11, 2023, the pending motion was taken under submission on the papers. (Doc. No. 11.)[1] For the reasons explained below, the court will deny defendant's motion in its entirety.

**BACKGROUND**

On May 30, 2023, plaintiff Simon Munoz filed the operative first amended complaint ("FAC") in the Stanislaus County Superior Court initiating this putative class action against his former employer, defendant RDO Equipment Co., alleging that defendant violated various

/////

---

[1] On September 13, 2023, the case was reassigned to the undersigned. (Doc. No. 15.)

1

1   California wage and hour laws.  (Doc. No. 1-2 at 2.)  On June 29, 2023, defendant removed the
2   action to this federal court.  (Doc. No. 1.)

3       In his FAC, plaintiff asserts the following nine claims:  (1) failure to pay wages owed in
4   violation of California Labor Code §§ 218, 218.5, 222–224, 1194, 1194.2, 1197; (2) failure to pay
5   overtime wages in violation of §§ 218, 218.5, 222–224, 1197; (3) failure to provide meal periods
6   in violation of §§ 226.7, 512; (4) failure to provide rest periods in violation of § 226.7; (5) failure
7   to adopt a compliant sick pay policy in violation of §§ 233, 234, 246; (6) failure to comply with
8   itemized employee wage statement provisions in violation of §§ 226, 246, 1174, 1175; (7) failure
9   to pay wages due at the time of termination in violation of §§ 201–203; (8) failure to reimburse
10  business expenses in violation of §§ 221, 2802; and (9) violation of California's Unfair
11  Competition Law, Business and Professions Code §§ 17200, *et seq.* ("the UCL").  (Doc. No. 1-2
12  at 16–38.)

13      Defendant is a corporation that distributes and sells agricultural and other equipment.
14  (Doc. No. 9-2 at 2.)  Plaintiff was employed by defendant from July 6, 2021 to January 3, 2023.
15  (*Id.* at 4.)  During plaintiff's onboarding process, defendant provided plaintiff with an electronic
16  copy of its employee handbook ("the Handbook") on July 14, 2021.  (*Id.* at 5.)  The Handbook
17  contained a provision regarding arbitration ("the Arbitration Provision"), described more fully
18  below.  (*Id.*)  That same day, July 14, 2021, plaintiff signed a form acknowledging receipt of the
19  Handbook ("the Acknowledgment"), also described more fully below.  (*Id.*)  Plaintiff was given
20  an updated Handbook with an Arbitration Provision in January 2022.  (*Id.* at 6.)  On February 1,
21  2022, plaintiff signed another Acknowledgment.  (*Id.*)[2]

22      The Arbitration Provision is one section of approximately 70 in the Handbook.  (*See* Doc.
23  Nos. 9-3 at 3; 9-5 at 3.)  The section heading style, font, bolding, and font size are the same as all
24  other sections in the Handbook.  (*See* Doc. Nos. 9-3; 9-5; 12-1.)  The Handbook does not contain

---

[2] The relevant portions of the 2021 and 2022 Handbooks, Arbitration Provisions, and Acknowledgments are identical.  (*See* Doc. Nos. 9-3 at 2–6; 9-4 at 2; 9-5 at 2–6; 9-6 at 2; 12-1 at 4–124.)  The parties refer to each set of differently dated documents collectively as the Handbook, Arbitration Provision, and Acknowledgment, respectively, throughout their papers.  The court shall do the same.

a space or line for an employee to sign under the Arbitration Provision. (*Id.*) The Arbitration Provision provides in relevant part as follows:

> As a condition of employment [with defendant], any controversy or claim arising out of or relating to the employment relationship with [defendant], or the termination of that relationship, must be submitted for non-binding mediation before a neutral third-party, and (if necessary) for final and binding resolution by a private and impartial arbitrator, to be jointly selected by the [employee] and [defendant] in accordance with this dispute resolution procedure ('Procedure'). . . . Both parties understand and agree that by entering into this agreement, they are waiving any right to a trial by jury that may be available to that party in any of the above-referenced disputes.

(Doc. Nos. 9-3 at 4–6; 9-5 at 4–6.)

The Acknowledgment reads in relevant part as follows:

> By checking 'Accept?', I acknowledge that I have received my copy of the Employee Handbook and that it is my responsibility to read, understand, and comply with the policies and procedures contained herein as a condition of my employment. . . . I understand that, except for my employment at-will status, any and all policies and practices may be changed at any time. I acknowledge that this Handbook provides policies and guidelines, and is not, nor intended to be, a contract of employment nor a legal document.

(Doc. Nos. 9-4 at 2; 9-6 at 2.)

As noted, plaintiff filed his operative FAC in the Stanislaus County Superior Court on May 30, 2023, and defendant removed the action to this federal court on June 29, 2023. (Doc. Nos. 1-2 at 2; 1.) On July 10, 2023, defendant filed the pending motion to compel arbitration and, if plaintiff's claims are compelled to arbitration, to dismiss the FAC. (Doc. No. 9.) Defendant filed a request for judicial notice that same day. (Doc. No. 10.) Plaintiff filed his opposition to the pending motion on July 24, 2023. (Doc. No. 12.) On August 3, 2023, defendant filed its reply thereto, as well as a request for judicial notice as to a minute order issued on August 1, 2023 in a case pending before the Riverside County Superior Court. (Doc. Nos. 13, 14.)

**LEGAL STANDARD**

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed

in the manner provided for in a contract between them. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In deciding a motion to compel arbitration, the court "is limited to determining (1) whether a valid agreement to arbitrate exists [within the contract] and, if it does, (2) whether the agreement encompasses the dispute at issue." *Boardman v. Pac. Seafood Group*, 822 F.3d 1011, 1017 (9th Cir. 2016) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (brackets in original)).

There is an "emphatic federal policy in favor of arbitral dispute resolution." *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985)). As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626 (citation omitted).

Pursuant to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. An arbitration agreement may only "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "[C]ourts must place arbitration agreements on an equal footing with other contracts." *Id.* Accordingly, courts may not apply traditional contractual defenses, like duress and unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and thereby undermine FAA's purpose to "ensur[e] that private arbitration agreements are enforced according to their terms." *Id.* at 344 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989)).

"To determine whether the parties formed an agreement to arbitrate, courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Int'l Bhd. of Teamsters v.*

*NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[U]nder California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270 (2001) ("An essential element of any contract is the consent of the parties, or mutual assent."). "Mutual assent may be manifested by written or spoken words, or by conduct, and acceptance of contract terms may be implied through action or inaction." *Knutson*, 771 F. 3d at 565 (internal citations omitted). "Thus, 'an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.'" *Id.* (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 991 (1972)). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Id.* However, "a signed agreement is not necessary to a valid arbitration agreement, and a party's acceptance may be implied." *Paxton v. Macy's W. Stores, Inc.*, No. 1:18-cv-00132-LJO-SKO, 2018 WL 4297763, at *4 (E.D. Cal. Sept. 7, 2018); *see also Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 383 (2016).

Under California law, the party moving to compel arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. *Knutson*, 771 F. 3d at 565. "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). In determining whether an agreement to arbitrate exists, "[t]he trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, and any oral testimony the court may receive at its discretion, to reach a final determination." *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th 836, 842 (2014) (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997), *as modified* (July 30, 1997)).

/////

/////

/////

## ANALYSIS

**A.    Whether an Agreement to Arbitrate Was Formed**

"First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). "That principle follows from the fundamental premise that arbitration is strictly a matter of consent." *Id.* (internal quotation marks and citation omitted). As noted above, agreements to arbitrate may be express or implied in fact. *Paxton*, 2018 WL 4297763, at *4; *Harris*, 248 Cal. App. 4th at 383.

In its pending motion, defendant argues that the Acknowledgment references and incorporates the Handbook, thereby evidencing plaintiff's express agreement to the Arbitration Provision contained therein. (Doc. No. 9 at 17.) Defendant further argues that plaintiff's employment was expressly conditioned on his acceptance of the Arbitration Provision. (*Id.*) In his opposition to the pending motion, plaintiff argues that he did not enter into any agreement to arbitrate for the following reasons: The Acknowledgment made no reference to the Arbitration Provision; the Acknowledgment and the Handbook itself both explicitly state that the Handbook is neither a contract nor a legal document; the Acknowledgment and the Handbook explicitly state that defendant reserves the right to change any policies in the Handbook; and the Arbitration Provision is buried in the lengthy Handbook and indistinguishable from other Handbook provisions. (Doc. No. 12 at 10–13.)[3] In reply, defendant argues that it is legally irrelevant that plaintiff chose not to read the Handbook and the Arbitration Provision in it. (Doc. No. 13 at 7.) Defendant analogizes at length to the California Court of Appeal's decision in *Harris*, 248 Cal. App. 4th 373, and argues that the authorities upon which plaintiff relies are either outdated in light of the decision in *Harris* or inapposite. (*Id.* at 6–8.)

/////

---

[3] Plaintiff purports to have included the entire text of the 2021 and 2022 Handbook as an attachment to his opposition. (*See* Doc. No. 12-1.) However, it appears that the attachment was not uploaded properly. While plaintiff has highlighted what he alleges are the key passages in the Handbook, those pages are entirely blank except for plaintiff's highlights. (*See id.* at 6–8, 11–13, 66–68, 71–73.) Ultimately, plaintiff's error in this regard has no impact on the court's resolution of the pending motion to compel arbitration.

1.  Whether an Express Agreement to Arbitrate Was Formed

One state appellate court recently analyzed nearly a dozen decisions by the California Court of Appeals which had considered whether an agreement to arbitrate existed where an employee had signed an acknowledgment of a handbook containing an arbitration provision. *See Mendoza v. Trans Valley Transport*, 75 Cal. App. 5th 748, 777–91 (2022). That state appellate court summarized the many factors that courts often consider in answering such a question. *See id.*

Nearly every factor discussed in the court's decision in *Mendoza* supports a finding that there was no express agreement to arbitrate here. To start, plaintiff had no opportunity to sign the Arbitration Provision or the Handbook itself. In this regard, the court in *Mendoza* observed:

> Unlike [*Romo v. Y-3 Holdings, Inc.*, 87 Cal. App. 4th 1153 (2001), and *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771 (2012), two decisions in which the courts held an agreement to arbitrate existed and] where the arbitration provisions in the handbook had signature lines, there are no signature lines on either the Arbitration Policy or anywhere else in the Handbook. Like the arbitration provision in [*Sparks v. Vista Del Mar Child & Fam. Servs.*, 207 Cal. App. 4th 1511 (2012), a decision in which the court held that there was no agreement to arbitrate,] there was no place for Mendoza to acknowledge the arbitration provision in writing.

75 Cal. App. 5th at 783. Here, the Arbitration Provision also uses the same font size, style, and bolding as every other section of the Handbook. *See Mendoza*, 75 Cal. App. 5th at 783–84 ("Some courts consider the location of the arbitration clause, its type size and style, and whether it stood out from the rest of the handbook. . . . The Arbitration Policy was not prominently distinguished from the other clauses in the Handbook, was not specifically highlighted, [and] did not stand out from other sections in the Handbook visually or in its use of language . . . ."). Additionally, the state appellate court in *Mendoza* noted, "[c]ourts that found no agreement to arbitrate relied on language in the handbook or acknowledgement forms that indicated that the handbook was intended to be informational, not contractual; could be changed by the employer at any time; or did not create a contract of employment." *Id.* at 784. All three of these factors are present here.

/////

1   "Another factor courts consider in determining whether the parties have agreed to arbitrate
2   is whether the acknowledgement form mentions arbitration." *Id.* at 785.  As was the case in
3   *Mendoza*, "[n]othing in the acknowledgement forms notified [plaintiff here] either that the
4   Handbook contained an arbitration clause or that his acceptance of the Handbook constituted a
5   waiver of his right to a judicial forum in which to resolve his wage and hour claims." *Id.* at 786.

6   The only relevant factor weighing in favor of finding that an agreement to arbitrate existed
7   in this case is that there was no "language in the arbitration clause or the handbook that indicated
8   that the employee was expected to sign an arbitration agreement that was separate from the
9   handbook." *Id.* at 783.  Such language, if present, would suggest that the Handbook was not itself
10  an arbitration agreement, and it is absent here.

11  Defendant cites several cases that are inapposite because the acknowledgment forms in
12  those cases referenced separate arbitration agreements, the plaintiffs signed the arbitration
13  agreements directly, the plaintiffs only argued that they had not actually signed the relevant
14  forms, or there was no handbook or acknowledgment form at all.  (*See* Doc. Nos. 9 at 17–18; 13
15  at 7.)  None of these circumstances are present here.

16  Defendant also relies upon the decision in *Davis v. Nordstrom, Inc.*, 755 F.3d 1089 (9th
17  Cir. 2014).  (*See* Doc. No. 9 at 17.)  The court in that case wrote:

> "The handbook Davis received when she began work established the ground rules of her employment, including that Davis and Nordstrom would arbitrate certain disputes.  She accepted employment on this basis, so there was a binding agreement to arbitrate."

21  755 F.3d at 1093.  Defendant does not expressly contend that the court's decision in *Davis* is
22  dispositive of the pending motion, and indeed it is not for several reasons.  The plaintiff in *Davis*
23  did not contest the existence of an initial express agreement to arbitrate based on the employee
24  handbook; her only argument was that later revisions to the handbook did not constitute an
25  implied agreement to arbitrate.  *See id.* at 1091.  *Davis* is therefore distinguishable on those
26  grounds alone.  Moreover, given the Ninth Circuit's holding in that case that an agreement to
27  arbitrate had been implied in fact, the court's statement quoted above regarding the handbook is
28  arguably dicta.  Indeed, many district courts have held or suggested as much, i.e., that accepting

8

1 employment after receiving a handbook does not always constitute an agreement to arbitrate.
2 *See, e.g.*, *Furlough v. Capstone Logistics, LLC*, No. 18-cv-02990-SVK, 2019 WL 2076723, at *6
3 (N.D. Cal. May 10, 2019) ("Some cases have held that e-signing or acknowledging general
4 statements in an employment application or receipt of arbitration-related documents does not
5 constitute an agreement to arbitrate. . . . As evident from the discussion of these cases, the
6 outcome appears to turn on the specific facts of each case.") (citing *Sparks*, 207 Cal. App. 4th
7 1511, *abrogated on other grounds as recognized by Harris*, 248 Cal. App. 4th 373; *Davis*, 755
8 F.3d 1089; *Harris*, 248 Cal. App. 4th 373); *Pineda v. Sun Valley Packing, L.P.*, No. 1:20-cv-
9 00169-DAD-EPG, 2022 WL 1625066, at *9 (E.D. Cal. May 23, 2022) (denying the defendant's
10 motion to compel arbitration because, among other considerations, "[h]ere, as in *Sparks*, *Esparza*,
11 and *Mitri*, there was no such reference to the arbitration provision in the acknowledgment form
12 that plaintiff signed"); *cf. Ashbey v. Archstone Prop. Mgmt., Inc.*, 612 F. App'x 430, 432 (9th Cir.
13 2015) (Christen, J., concurring) (distinguishing *Sparks* and finding that the plaintiff had entered
14 into an express agreement to arbitrate because the acknowledgment form explicitly referenced the
15 dispute resolution policy).[4]  Finally, a series of California Court of Appeal decisions issued after
16 the Ninth Circuit's decision in *Davis* makes clear that under current California law, many factors
17 determine whether or not an acknowledgment form and handbook constitute an agreement to
18 arbitrate. *See Harris*, 248 Cal. App. 4th at 380–85; *Esparza v. Sand & Sea, Inc.*, 2 Cal. App. 5th
19 781, 787–92 (2016); *Mendoza*, 75 Cal. App. 5th at 777–91.

20 /////
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

9

Next, defendant cites the decision in *Harmon v. RDO Equip. Co.*, No. 18-cv-02602-JVS-KK, 2019 WL 4238877 (C.D. Cal. July 3, 2019).[5] (*See id.*) The district court in that case considered defendant's same Handbook and Arbitration Provision and held that "the preponderance of the evidence . . . demonstrates that the parties agreed to arbitrate." *Harmon*, 2019 WL 4238877, at *4. However, because the plaintiff in *Harmon* challenged only the validity of her signature on the documents, the district court did not analyze whether a valid agreement had been formed in light of decisions such as those cited in the state appellate court's 2022 decision in *Mendoza*. *See id.* Consequently, the district court's decision in *Harmon* is both distinguishable and fails to support defendant's motion.[6]

In its reply to plaintiff's opposition, defendant analogizes to the California Court of Appeal's decision in *Harris*, 248 Cal. App. 4th 373. (Doc. No. 13 at 7–8.) According to defendant, an express agreement to arbitrate was formed here because, as in *Harris*, the Acknowledgment and Arbitration Provision both state that arbitration is a "condition of employment." (*Id.*) This court disagrees. While the Acknowledgment does state that the employee must "comply" with the Handbook policies "as a condition of [their] employment," there is no mention in the Acknowledgment of arbitration. (*See* Doc. Nos. 9-4 at 2; 9-6 at 2.)

---

[5] Defendant requests that the court take judicial notice of this decision. (*See* Doc. Nos. 10 at 2; 10-2 at 2–9.) Because a district court may take notice of proceedings in other courts if those proceedings have a direct relation to matters at issue, *see United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992), defendant's request is granted. In the same request, defendant asks the court to take judicial notice of the American Arbitration Association's Employment Arbitration Rules & Mediation Procedures ("the Rules"). (*See* Doc. Nos. 10 at 2; 10-1.) Because the court will conclude that no agreement to arbitrate was formed and will decline to consider the subsequent issues to which the Rules are allegedly relevant, defendant's request in this latter regard is denied.

[6] Similarly, defendant requests that the court take judicial notice of a minute order issued in a case by the Riverside County Superior Court in which the court granted defendant's motion to compel arbitration. (*See* Doc. Nos. 14; 14-1.) Because a district court may take notice of proceedings in other courts if those proceedings have a direct relation to matters at issue, *see Robinson Rancheria*, 971 F.2d at 248, defendant's request is granted. However, in that minute order, the state trial court adopted defendant's conclusory proposed order to compel arbitration simply by striking the word "proposed"; the court provided no explanation as to why the motion was being granted. The proffered minute order is therefore unpersuasive and unhelpful in resolving the motion pending before this court.

*Harris* is thus distinguishable, because the acknowledgment in that case specifically stated "I hereby confirm and acknowledge receipt of . . . [the defendant's] Alternative Dispute Resolution Agreement for current employees" and nothing similar is present here. *Harris*, 248 Cal. App. 4th at 377.

In apparent anticipation that the court's decision in *Harris* would be found to be distinguishable, defendant argues that considering whether the Acknowledgment references arbitration as a factor in the analysis above would constitute treating arbitration provisions differently from other contractual terms, which the FAA prohibits. (*See* Doc. No. 13 at 8). Defendant does not elaborate on this argument, nor does defendant cite any authority suggesting that considering this factor would violate the FAA. To the contrary, even the cases that defendant cites assume the validity of considering this factor and expressly distinguish cases in which the acknowledgment forms did not mention arbitration. *See, e.g.*, *Harris*, 248 Cal. App. 4th at 383 ("Plaintiff asserts that like the employee in *Sparks*, defendants failed to sufficiently call attention to the arbitration requirement in the acknowledgment. . . . *Sparks* is materially distinguishable on two specific grounds. . . . Unlike the situation in *Sparks*, the arbitration agreement here was specifically highlighted in the signed acknowledgment form as the appendix to the Employee Handbook."); *Reynolds v. NRC Env't Servs Inc.*, No. 20-cv-05262-MWF-PD, 2020 WL 6083112, at *4 (N.D. Cal. Aug. 24, 2020) ("Here, like in *Harris*, plaintiff signed the Acknowledgment Form, which directly referenced the [Arbitration] Agreement."). Defendant's argument in this regard therefore fails.

Defendant goes on to argue that the state appellate court decisions in *Sparks*, *Mitri*, and *Ajamian*, which stressed that the respective acknowledgment forms did not reference arbitration, are "outdated" because they "pre-date" the court's decision in *Harris*. (Doc. No. 13 at 8.) However, even if the decision in *Harris* is irreconcilable with those previous decisions—which this court does not believe—"it has long been the rule that no published [California] Court of Appeal decision has *binding* effect on any other Court of Appeal," so those three decisions remain good law. Cal. R. Ct. 8.1115 cmt. Moreover, the decision in *Harris* pre-dates the decision in *Mendoza*, which relies on the cases that defendant now characterizes as "outdated."

11

1   Defendant then argues that the decision in *Mendoza* is inapposite because it involves the
2   California Arbitration Act ("CAA") instead of the FAA (*see* Doc. No. 13 at 8), but defendant is
3   incorrect on this point.  The court in *Mendoza* was answering the same question as would be
4   asked in an analysis conducted under the FAA, namely whether an agreement to arbitrate had
5   been formed under California law.  *See Mendoza*, 75 Cal. App. 5th at 777.  Indeed, many of the
6   cases on which the court relied in *Mendoza* arose under the FAA, not the CAA.  *See, e.g.*, *Sparks*,
7   207 Cal. App. 4th at 1518 ("The arbitration clause in question provides for the application of the
8   [FAA]."); *Ajamian*, 203 Cal. App. 4th at 782 n.4 ("The parties agree that the arbitration clause is
9   subject to the FAA.").

10   Finally, defendant argues that certain language in the Acknowledgment, specifically that
11   stating that the Handbook is not a legal document, does not prevent the Acknowledgment itself
12   from being an agreement.  (Doc. No. 13 at 8.)  That is, defendant argues that the
13   Acknowledgment is an express agreement to comply with the Handbook and the Arbitration
14   Provision.  (*Id.*)  Defendant again provides no authority in support of this argument, which was
15   squarely rejected by the court in *Mendoza*.  *See Mendoza*, 75 Cal. App. 5th at 784 ("The Second
16   Acknowledgment . . . requir[ed] Mendoza to acknowledge that the Handbook and the policies
17   contained therein 'are not in any way intended as a contract of employment.'  This language . . .
18   indicates that the Handbook and the Acknowledgment forms were intended to be informational,
19   not contractual.").

20   For the reasons above, the court concludes that defendant has failed to prove the existence
21   of an express agreement to arbitrate.

22       2.    <u>Implied Agreement</u>

23   Defendant argues that an agreement to arbitrate was implied in fact because plaintiff
24   continued to work for defendant after being notified of the Arbitration Provision by the
25   Acknowledgment and the Handbook.  (Doc. No. 9 at 18–19.)  Plaintiff responds that California
26   courts have routinely found no implied agreement to arbitrate under such circumstances.  (Doc.
27   No. 12 at 13–15.)

28   /////

While defendant cites a host of decisions in support of its argument, in none of them has a court held that an implied agreement to arbitrate existed where an arbitration provision was contained in a handbook and the acknowledgment form did not mention arbitration. Defendant does cite the court's decision in *Harris*. (*See* Doc. No. 12 at 7 (citing *Harris*, 248 Cal. App. 4th 373)); *see also Mendoza*, 75 Cal. App. 5th at 790 ("The only [California Court of Appeal] case to apply the implied-in-fact contract theory to an arbitration agreement in an employee handbook was *Harris*."). However, the court in *Harris* stressed that the handbook in question "expressly addressed the effect of an employee's failure to execute the attached arbitration agreement" through the following provision: "If, for any reason, an applicant fails to execute the Agreement to Arbitrate yet begins employment, that employee will be deemed to have consented to the Agreement to Arbitrate by virtue of receipt of this Handbook." *Harris*, 248 Cal. App. 4th at 384, 378.[7] That court also distinguished the situation where such a provision was not present. *Id.* at 384 ("Neither these contractual terms nor this scenario were present in *Sparks*."). By contrast, "[t]here is no such provision in the documents at issue here." *Mendoza*, 75 Cal. App. 5th at 790.

Accordingly, the court concludes that defendant has failed to show that an agreement to arbitrate was implied in fact here. *See Mendoza*, 75 Cal. App. 5th at 788 ("Employers contend that Mendoza assented to arbitration because he received a copy of the Handbook, which contains the Arbitration Policy, and worked for [the defendant] after he received it. [The California Court of Appeal's decisions in] *Mitri*, *Ajamian*, and *Esparza* all rejected this argument."); *see also id.* at 791 ("Since this case is distinguishable from . . . *Harris*, and considering the other authorities discussed above, we reject Employers' contention that Mendoza entered into an implied-in-fact agreement to arbitrate by simply receiving a copy of the Handbook and working for [the defendant].").

/////

/////

/////

---

[7] Notably, the court in *Harris* had already found that an express agreement to arbitrate existed. *Harris*, 248 Cal. App. 4th at 380–83.

Because defendant has failed to prove the existence of an agreement to arbitrate, its motion to compel arbitration will be denied.[8] Because defendant's motion to dismiss plaintiff's complaint is predicated on the success of defendant's motion to compel arbitration, defendant's motion to dismiss will also be denied.

## CONCLUSION

For the reasons explained above,

1. Defendant's motion to compel arbitration and to dismiss plaintiff's first amended complaint (Doc. No. 9) is denied; and

2. Defendant shall file an answer responding to the claims asserted in plaintiff's first amended complaint no later than twenty-one (21) days after the date of entry of this order.

IT IS SO ORDERED.

Dated:  **March 22, 2024**           *Dale A. Drozd*
                                    DALE A. DROZD
                                    UNITED STATES DISTRICT JUDGE

---

[8] Defendant raises many other arguments in support of their contention that arbitration should be compelled. (*See* Doc. Nos. 9 at 13–16, 19–24; 13 at 9–15.) Because the pending motion will be denied at the initial step of the inquiry due to the lack of an agreement to arbitrate, the court need not—and therefore does not—consider defendant's remaining arguments.