David Mara, Esq. (230498)
Jill Vecchi, Esq. (299333)
**MARA LAW FIRM, PC**
2650 Camino Del Rio North, Suite 302
San Diego, California 92108
Telephone: (619) 234-2833
Facsimile: (619) 234-4048
Email: dmara@maralawfirm.com
    jvecchi@maralawfirm.com

Douglas Han, Esq. (232858)
Shunt Tatavos-Gharajeh, Esq. (272164)
William Wilkinson, Esq. (346777)
**JUSTICE LAW CORPORATION**
751 N. Fair Oaks Avenue, Suite 101
Pasadena, California 91103
Telephone: (818) 230-7502
Facsimile: (818) 230-7259
Email: dhan@justicelawcorp.com
    statavos@justicelawcorp.com
    wwilkinson@justicelawcorp.com

Attorneys for Plaintiff SIMON MUNOZ, on behalf of himself,
all others similarly situated, and on behalf of the general public

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON MUNOZ and GIANCARLO BLANCO on behalf of themselves, all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>RDO EQUIPMENT CO.; and DOES 1-100,<br><br>          Defendants. | Case No. 1:23-cv-00979-DAD-AC<br>[Hon. Dale A. Drozd]<br><br><br>**PLAINTIFFS SIMON MUNOZ AND GIANCARLO BLANCO'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><br>Date: November 17, 2025<br>Time: 1:30 p.m.<br>Courtroom: 4<br><br><br>Action Filed: April 25, 2023<br>Action Removed: June 28, 2023<br>Trial Date: None Set |

**TO ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs Simon Munoz and Giancarlo Blanco move this Court for an order: (1) confirming certification of the Class for settlement purposes only; (2) finally approving the settlement embodied in the Joint Stipulation and Settlement Agreement; (3) confirming Phoenix Settlement Administrators as the Settlement Administrator and granting the requested fee for its services as Settlement Administrator; (4) finally approving the Private Attorneys General Act of 2004 Payment; and (5) entering judgment.

This motion is set for determination on November 17, 2025, at 1:30 p.m. in Courtroom 4 before the Honorable Dale A. Drozd in Robert T. Matsui United States Courthouse located at 501 I Street, Sacramento, California 95814. This motion is based upon this notice, the accompanying Memorandum of Points & Authorities filed herewith, the accompanying Declaration of David Mara filed herewith and all exhibits thereto, the Declaration of Kevin Lee for Phoenix Settlement Administrators, the Order Granting Preliminary Approval, the filings on record in this case, and upon such further evidence, both documentary and oral, that may be presented at the hearing of this motion.

Dated: October 10, 2025

**MARA LAW FIRM, PC**

By: /s/  *Jill Vecchi*
David Mara, Esq.
Jill Vecchi, Esq.
Attorneys for Plaintiff

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.................................................2

   a.   The *Blanco* Matter .........................................................................................2

   b.   The *Munoz* Matter .........................................................................................2

   c.   Investigation ...................................................................................................2

   d.   Settlement Negotiations ..................................................................................3

III.    SUMMARY OF SETTLEMENT........................................................................3

   a.   The Proposed Class .........................................................................................3

   b.   The Gross Settlement Amount .........................................................................3

   c.   Settlement Payments to Class Members............................................................4

   d.   Funding and Distribution of Settlement Funds .................................................5

   e.   Uncashed Checks.............................................................................................5

   f.   Released Claims...............................................................................................5

IV.     THE SETTLEMENT NOTICE PROCESS WAS SUCCESSFUL ...........................5

   a.   Dissemination of the Class Notice ...................................................................5

   b.   No Objections and Only One Request for Exclusion Were Received by Phoenix .................6

V.      DISCUSSION ...................................................................................................6

   a.   The Settlement Meets the Standards Governing Final Approval ........................6

      i.    The Settlement was a Result of Arm's-Length Negotiations ...............................7

      ii.   *In re Bluetooth* Factors are not Present Here....................................................7

      iii.  The Settlement is Fair...................................................................................8

      iv.   Liability on the Merits and Class Certification ..............................................8

         1.   Meal Periods ..........................................................................................9

         2.   Rest Periods ...........................................................................................10

         3.   Unpaid Overtime Wages ........................................................................11

         4.   Wage Statements ...................................................................................11

         5.   Business Reimbursements ......................................................................13

6.    Waiting Time Penalties ....................................................................13

7.    PAGA ..............................................................................................14

b.    Sufficient Discovery and Investigation Has Occurred ........................................15

c.    Class Counsel Have Extensive Experience Acting as Class Counsel ...................15

d.    The Class Members' Response to the Settlement is Further Evidence That the Settlement is Fair and Reasonable..........................................................................................16

e.    The Court Should Approve the Settlement Administration Fee ...........................16

f.    The Court Should Approve the PAGA Payment to the LWDA...........................16

VI.    CONCLUSION ..............................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Alvarado v. Dart Container Corporation of California*, 4 Cal. 5th 542 (2018)...............................11

*Alvarado v. Wal-Mart Assoc., Inc.*, 2021 U.S. Dist. LEXIS 245799 *1 (C.D. Cal. Nov. 3, 2021) ....13

*Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008)..........................................12, 14

*Avila v. Cold Spring Granite Co.*, 2018 U.S. Dist. LEXIS 6142 *1 (E.D. Cal. Jan. 12, 2018) ..........14

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) .................................................7

*Bufil v. Dollar Fin. Grp., Inc.*, 162 Cal.App.4th 1193 (2008).............................................10

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) .................................................6

*Cochran v. Schwan's Home Service, Inc.*, 228 Cal.App.4th 1137 (2014) .................................13

*Donohue v. AMN Services, LLC*, 11 Cal.5th 58 (2021) ....................................................9

*Gattuso v. Harte-Hanks Shoppers, Inc.*, 169 P.3d 889 (2015)............................................13

*H&R Block Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...............................7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).........................................6, 7, 8

*Hernandez v. BCI Coca-Cola Bottling Co.*, 554 Fed. Appx. 661 (9th Cir. 2014) ........................12

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011)...................7, 8

*In re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555 *1 (C.D. Cal. June 10, 2005)............6

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000)..........................................................6

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) ..................................................7

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .........................................8

*Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308 (2018)........................................12

*Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832 (9th Cir. 1976) ...........................16

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) .........................................8

*Morgan v. United Retail Inc.*, 186 Cal.App.4th 1136 (2010)..............................................12

*Naranjo v. Spectrum Security Services, Inc.*, 15 Cal.5th 1056 (2024) ...................................12

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615 (9th Cir. 1982)................................................................................................8

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................................7

*Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359 *1 (C.D. Cal. 2014)................8

## I.    INTRODUCTION

Plaintiffs Simon Munoz ("Plaintiff Munoz") and Giancarlo Blanco ("Plaintiff Blanco") (collectively, "Plaintiffs") seek final approval of the Parties' Joint Stipulation and Settlement Agreement ("Agreement" or "Settlement Agreement").[1] The proposed Settlement is a non-reversionary $2,040,000 Gross Settlement Amount ("GSA") on behalf of 641 Class Members. The proposed Class is defined as all current and former non-exempt, hourly employees who were employed by RDO in California at any time from April 25, 2019, through May 11, 2024.[3] The settlement is projected to pay each Settlement Class Member an average settlement share of approximately $1,867.64.[4] The highest estimated settlement share is approximately $4,127.57.[5]

In response to the Class Notice, no Class Members objected to the settlement and only one Class Member requested to be excluded from the settlement. Therefore, 640 Class Members are participating in the settlement. (*See* Lee Dec. ¶ 11). The Class Members' response supports the Court's finding that the settlement is fair, reasonable, and adequate. For the reasons that follow, it is respectfully requested the Court grant this motion and find the settlement is fair, reasonable, and adequate.

---

[1] A true and correct copy of the Settlement Agreement is attached to the Declaration of David Mara, Esq. as **Exhibit 1**. Plaintiffs submitted the preliminary approval motion, which included the settlement agreement, to the LWDA on December 17, 2024. To date, the LWDA has not commented on the proposed settlement.

[2] The Agreement indicates that if Final Approval is not achieved by September 11, 2025, then Defendant shall add 2% ($40,000) to the Gross Settlement Amount. Prior to the date of the Notice mailing, the Final Approval hearing was scheduled for November 11, 2025. Accordingly, $40,000 was added to the Gross Amount. Therefore, the Gross Settlement amount is $2,040,000 (*i.e.* $2,000,000 *plus* $40,000). (*See* Declaration of Kevin Lee Regarding Notice and Settlement Administrator ("Lee Dec.") fn. 1; *see also* Exhibit 1 ¶ 24).

[3] The Escalator Provision of the Agreement indicates that, if the total number of workweeks during the period from April 25, 2019, through July 9, 2024, exceeds 70,065 by more than 10% (*i.e.* if there are more than 77,071 workweeks during the aforementioned period), then Defendant agrees to either, (a) increase the Gross Settlement Amount on a proportionate basis for the percentage increase over 10%, or (b) adjust the end date of the Class Period to have an earlier end date to limit the number of workweeks below 77,071. The Escalator Provision was triggered, and Defendant elected to adjust the end date of the Class Period so as to have an earlier end date so as to keep the number of workweeks less than 77,071. As of May 11, 2024, Class Members had worked 76,704 workweeks. Accordingly, the Class Period ends on May 11, 2024. (*See* Lee Dec. ¶ 12).

[4] Lee Dec. ¶ 14.

[5] Lee Dec. ¶ 14.

Plaintiff's Notice of Motion and Motion for Final Approval
Case No. 1:23-cv-00979-DAD-AC

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a construction, agricultural, landscape, utility, recycling, and forestry equipment supplier. This lawsuit alleges that Defendant violated various wage and hour laws applicable to Defendant's hourly, non-exempt employees in California. (Mara Dec. ¶ 2).

### a.    The *Blanco* Matter

On February 21, 2023, Plaintiff Blanco provided notice to the LWDA in accordance with the PAGA. On March 8, 2023, Plaintiff Blanco filed his action in the Riverside County Superior Court (Case No. CVRI2301163) alleging violations of the PAGA. Plaintiff Blanco's complaint alleges that Defendant failed to pay all minimum and overtime wages, failed to provide lawful meal and rest periods, failed to timely pay wages during employment, failed to timely pay wages at the termination of employment, failed to provide complete and accurate wage statements, and failed to reimburse for business expenses. (Mara Dec. ¶ 3).

### b.    The *Munoz* Matter

On February 16, 2023, Plaintiff Munoz provided notice to the LWDA in accordance with PAGA. Plaintiff Munoz filed this matter in the action in the Stanislaus County Superior Court alleging violations under PAGA (Case No. CV-23-002243). On May 30, 2023, Plaintiff Munoz filed a First Amended Complaint withdrawing his PAGA allegations and instead asserting class claims under the Labor Code for Defendant's alleged failure to pay all straight time wages, failure to pay all overtime wages, failure to provide meal periods, failure to authorize and permit rest periods, failure to adopt a compliant sick pay/paid time off policy, knowing and intentional failure to comply with itemized employee wage statement provisions, failure to pay all wages due at the time of termination of employment, failure to reimburse/illegal deductions, and violation of the Unfair Competition Law. Defendant removed Plaintiff Munoz's action to the United States District Court, Eastern District of California on June 29, 2023. On December 19, 2024, Plaintiff Munoz filed a Second Amended Complaint adding Plaintiff Blanco as a plaintiff in the Class Action and adding a cause of action pursuant to the PAGA. (Mara Dec. ¶ 4).

### c.    Investigation

The Parties conducted significant investigation and discovery of the facts and law, both before and after this action was filed. Through informal discovery, Defendant produced over a thousand pages

of documents. These documents included policy documents that covered Class Members' employment with Defendant, such as employee handbooks. Included within these documents were Defendant's wage and hour policies, including its meal and rest period policies. Defendant also produced multiple Excel files that included employees' hire and termination dates, as well as a sampling of employees' time and pay records. (Mara Dec. ¶ 5).

Plaintiffs had an expert review and analyze the sampling of time and pay records. Plaintiffs also requested, and Defendant produced, data surrounding the number of current and former employees, as well as the number of workweeks worked by Class Members during the relevant time period, to establish a potential exposure model in preparation for mediation. From this discovery, Plaintiffs and their Counsel were able to analyze Defendant's liability in this action and prepare a realistic damage model. (Mara Dec. ¶ 6).

### d.  Settlement Negotiations

The Parties attended two (2) mediations with respected wage and hour mediator David Rotman on July 9, 2024, and September 11, 2024. These mediations ultimately resulted in the Parties reaching a settlement, which was reduced to a Memorandum of Understanding. Thereafter, the Parties entered into a long-form Settlement Agreement, which is now before the Court for final approval. (Mara Dec. ¶ 7; *see also* Exhibit 1 attached to the Mara Dec.).

## III.    SUMMARY OF SETTLEMENT

### a.  The Proposed Class

The Class is comprised of all current and former non-exempt, hourly employees who were employed by RDO in California at any time from April 25, 2019, through May 11, 2024.

### b.  The Gross Settlement Amount

RDO shall pay a Gross Settlement Amount ("GSA") of $2,040,000 to fully and finally settle this matter. This is the total amount RDO can be required to pay under this Settlement, with the exception of employer payroll taxes, which will remain RDO's exclusive responsibility and will be paid by RDO separate and apart from the GSA. ***No portion of the GSA will revert to RDO for any reason***. Subject to the Court's final approval, the following deductions will be made from the GSA: (1) $10,000 each to Plaintiffs/Class Representatives Simon Munoz and Giancarlo Blanco, to compensate them for their time,

effort and risks they undertook in filing this lawsuit; (2) $679,932 (33.33% of the GSA) to Class Counsel for attorneys' fees to compensate them for their work on the lawsuit, as well as any work remaining in securing Court approval of the settlement, administration of the settlement, and obtaining dismissal of the lawsuit; (3) $32,776.55 (previously estimated not to exceed $50,000) to Class Counsel for reimbursement of their litigation costs; (4) $12,000 to Phoenix Settlement Administrators ("Phoenix") for its work performed and to be performed in administering the settlement; and (5) $75,000 to the California Labor and Workforce Development Agency ("LWDA") for its 75% share of the $100,000 PAGA Payment.

### c. Settlement Payments to Class Members

After all deductions have been made, it is estimated that $1,195,291.45 ("Net Settlement Amount" or "NSA") will be available for disbursement to Participating Class Members.[6] The money available for payout to these individuals comes out of the NSA, which is what remains of the GSA after subtracting all Court-approved attorneys' fees and costs, the class representative enhancements, settlement administration costs, and the PAGA Payment. The entire NSA will be distributed to Participating Class Members.

Each Participating Class Member will receive a proportionate share of the NSA which will be calculated using the formula set forth in the Settlement Agreement. (Exhibit 1 ¶ 57(A)(i)). The value of each Participating Class Member's Individual Settlement Share ties directly to the amount of weeks that he or she worked during the Class Period. Each Class Member's Individual Settlement Share will be apportioned as follows: forty percent (40%) wages and sixty percent (60%) to interest and penalties/other payments. (Exhibit 1 ¶ 57(B)).

In addition, each Aggrieved Employee will receive a proportionate share of the Net PAGA Settlement Amount, which will be calculated using the formula set forth in the Settlement Agreement. (Exhibit 1 ¶ 58(A)(i)). The value of each Aggrieved Employees' Individual PAGA Settlement Share ties directly to the amount of pay periods that he or she worked during the PAGA Period. Each Aggrieved Employee's Individual PAGA Settlement Share will be apportioned as one hundred percent (100%) penalties. (Exhibit 1 ¶ 58(B)).

---

[6] Participating Class Members are all Class Members who do not submit a valid and timely request to exclude themselves from this Settlement. (Exhibit 1 ¶ 37).

### d. Funding and Distribution of Settlement Funds

Once the Court enters Judgement on its Order Granting Final Approval of the Settlement and the Judgment is final,[7] Defendant shall wire or otherwise provide to the Settlement Administrator the GSA within seven (7) calendar days. (Exhibit 1 ¶¶ 23 and 61(M)(i)). Within ten (10) calendar days after the Settlement Administrator's receipt of the GSA, the Settlement Administrator will disburse all payments required under the Settlement. (Exhibit 1 ¶¶ 19 and 61(M)(ii)).

### e. Uncashed Checks

Participating Class Members and Aggrieved Employees must cash or deposit their settlement checks within one hundred eighty (180) calendar days after the checks are mailed to them. All funds associated with the Individual Settlement Share checks returned as undeliverable and funds associated with those checks remaining un-cashed shall be sent to the California Controller's Unclaimed Property Fund in the name of the Class Member, thereby leaving no "unpaid residue" subject to the requirements of Code of Civil Procedure section 384, subdivision (b). (Exhibit 1 ¶ 61(O)).

### f. Released Claims

As of the Effective Final Settlement Date, Participating Class Members shall release the Released Parties from the Released Class Claims. Participating Class Members agree not to sue or otherwise make a claim against any of the Released Parties for any of the Released Class Claims. (Exhibit 1 ¶ 40).

As of the Effective Final Settlement Date, Aggrieved Employees shall release the Released Parties from the Released PAGA Claims. Aggrieved Employees agree not to sue or otherwise make a claim against any of the Released Parties for any of the Released PAGA Claims. (Exhibit 1 ¶ 41).

## IV. THE SETTLEMENT NOTICE PROCESS WAS SUCCESSFUL

### a. Dissemination of the Class Notice

The Court granted preliminary approval of the settlement on July 30, 2025. (ECF Dkt. No. 45). At that time, Phoenix was appointed by the Court as the Settlement Administrator. Phoenix has complied

---

[7] The Judgment is final as of the latest of the following occurrences: (i) if no Participating Class Member objects to the Settlement, the day the Court enters Judgment; (ii) if one or more Participating Class Members objects to the Settlement, the day after the deadline for filing a notice of appeal from the Judgment; or (iii) if a timely appeal from the Judgment is filed, the day after the appellate court affirms the Judgment and issues a remittitur. (Exhibit 1 ¶ 20).

1    with this Court's orders concerning dissemination of the Class Notice. After the Court granted preliminary

2    approval, on August 11, 2025, RDO sent the Class List to Phoenix. (Lee Dec. ¶ 3). Phoenix conducted a

3    National Change of Address search on the addresses in the Class List in an attempt to update the addresses

4    as accurately as possible. (*Id.* at ¶ 4). The Class Notice was mailed to Class Members on August 21, 2025.

5    (*Id.* at ¶ 5). As of the date of this filing, no Class Notices are considered undeliverable. (*Id.* at ¶ 7).

6    **b. No Objections and Only One Request for Exclusion Were Received by Phoenix**

7    The deadline to submit an objection to the settlement or a request for exclusion from the

8    settlement was September 20, 2025. No objections have been filed with the Court or submitted to Pheonix.

9    (Lee Dec. at ¶ 9). One request for exclusion was received by Phoenix. (*Id.* at ¶ 8). Therefore, 99.84% of

10   the 641 Class Members are participating in the settlement. (*Id.* at ¶ 11).

11   **V.    DISCUSSION**

12   **a. The Settlement Meets the Standards Governing Final Approval**

13   Matters that have been filed as class actions require court approval before a settlement can be

14   consummated. *See* Fed. R. Civ. Proc. ("FRCP") 23(e). FRCP 23(e) provides that any compromise of a

15   class action must receive Court approval. The Court has broad discretion to grant approval and should do

16   so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon*

17   *v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir.

18   2000). In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial

19   policy that favors settlements, particularly where complex class action litigation is concerned." *In re*

20   *Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555, *9 (C.D. Cal. June 10, 2005) (*citing Class*

21   *Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

22   Approval of a class action settlement involves a two-step process. In determining whether to grant

23   final approval of the settlement, a court examines the terms for overall fairness and, in so doing, balances

24   the following factors: the strength of the plaintiff's case; the risk, expense, complexity and likely duration

25   of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in

26   settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of

27   counsel; the presence of a governmental participant; and, the reaction of the class members to the proposed

28   settlement. *Hanlon*, 150 F.3d at 1026.

Here, the proposed settlement was reached only after undertaking a robust factual and legal investigation into the claims and defenses in this lawsuit. The settlement amount takes into consideration the risks with regard to the Court granting certification of Plaintiffs' claims, as well as difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness.

### i. The Settlement was a Result of Arm's-Length Negotiations

The Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *H&R Block Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *see also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness). The proposed settlement is the product of arm's-length negotiations facilitated by mediator David Rotman.

### ii. *In re Bluetooth* Factors are not Present Here

In *Bluetooth,* the Ninth Circuit articulated additional factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011). As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or other conflicts of interest than ordinarily are required under Rule 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

1. When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;
2. When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;
3. When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

-7-

1   *Id* at 947. This settlement passes the *Bluetooth* test. The NSA is two times larger than the fees requested

2   by Class Counsel, which is 33.33% of the GSA. Additionally, any amount requested by Class Counsel

3   and not awarded by the Court shall become part of the NSA and distributable to Participating Class

4   Members. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant settlement cannot be

5   said to arouse suspicion of collusion.

6                                  **iii.  The Settlement is Fair**

7           When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the

8   Court is to review the strength of a plaintiff's case, including "the probable outcome of a trial on the merits

9   of liability and damages as to the claims, issues, or defenses of the class and individual class members."

10  *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) (*citing

11  *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In ruling on final approval, the "fairness

12  hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Id.* (*quoting Officers for Justice*

13  *v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

14          There is no standard or benchmark for determining whether a settlement is fair. "Ultimately the

15  district court's determination is nothing more than 'an amalgam of delicate balancing, gross

16  approximations and rough justice.'" *Officers for Justice v. Civil Service Comm. of City and County of San*

17  *Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). A court should weigh the benefits that the settlement will

18  realize for the class against the uncertainty of litigation and the possibility that the class members would

19  obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242

20  (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and

21  expensive litigation that induce consensual settlements."); *see also Hanlon*, 150 F.3d at 1026 (When

22  considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case

23  against the risk, expense, complexity and likely duration of further litigation.).

24                          **iv.  Liability on the Merits and Class Certification**

25          Plaintiffs recognize that none of their class-wide claims would result in a guaranteed win.

26  Plaintiffs' core claims here are for meal and rest break violations and unpaid wages, which faced

27  significant challenges that had to be considered in negotiating a settlement. In addition, Plaintiffs had to

28  take into consideration the fact that Defendant is appealing the Court's Order Denying Defendant's

1  Motion to Compel Arbitration and to Dismiss Plaintiff's First Amended Complaint. If Defendant's appeal

2  were successful, and the Court of Appeal reversed this Court's Order, Plaintiff's First Amended Complaint

3  would be dismissed and the Class Members would not be entitled to any damages under this lawsuit.

4  While Plaintiffs believe that the Court of Appeal would affirm this Court's Order, they had to consider

5  the possibility that this would not be the case. Given the proposition that the Class's damages could be

6  reduced to zero, Plaintiffs had to take this into account in reaching a settlement.

7  ### 1. Meal Periods

8  Plaintiffs contend that Defendant does not provide employees with meal periods that conform with

9  the law. Employers have an obligation under the law to provide employees with thirty (30) minute meal

10 periods. Under Labor Code section 512(a), "[a]n employer may not employ an employee for a work period

11 of more than five hours per day without providing the employee with a meal period of not less than 30

12 minutes . . . ." Cal. Lab. Code § 512(a). An employer "satisfies this obligation [to provide meal periods]

13 if it relieves its employees of all duty, relinquishes control over their activities and permits them a

14 reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them

15 from doing so." *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1040. Here, Plaintiffs

16 contend that Defendant's time records show non-compliant meal periods. (Mara Dec. ¶ 8).

17 In *Donohue v. AMN Services, LLC*, the California Supreme Court issued a decision, wherein it

18 ruled that time records showing late, short, or missed meal periods raises a rebuttable presumption that

19 the meal periods were not provided: "If time records show missed, short, or delayed meal periods with no

20 indication of proper compensation, then a rebuttable presumption arises" that the meal periods were not

21 provided in accordance with the law. *Donohue v. AMN Services, LLC*, 11 Cal.5th 58, 74 (2021). Plaintiffs

22 contend that, here, the time records show non-compliant meal periods in 60% of shifts. In these shifts,

23 under *Donohue*, Plaintiffs contend that it is presumed that meal period violations occurred. (Mara Dec. ¶

24 9).

25 Defendant asserts that its meal period policy is lawful and that it provides employees with meal

26 periods in compliance with the law. Defendant alleges that if litigation continues, it would be able to show

27 that it advised employees of the right to take a compliant meal period. Defendant contends that employees

28 either took a lawful meal period or knowingly and voluntarily decided to skip the meal period or take a

-9-

late or short meal period. Defendant contends that this evidence would rebut the presumption under *Donohue v. AMN Services, LLC*. Defendant also asserts that in rebutting the presumption, the Court or fact finder would have to ask each employee why their time records show a non-compliant meal period. Defendant contends that, due to this, class certification is not proper as individualized issues would predominate. Defendant also asserts that the evidence in this case shows that it paid meal period premiums in shifts in which employees were not provided with compliant meal periods, so the damages calculated by Plaintiffs would be reduced. (Mara Dec. ¶ 10).

## 2. Rest Periods

Plaintiffs allege that employees are not provided with lawful rest periods. Employers have an obligation to provide employees with ten (10) minute rest periods. An employer's obligation to provide its employees with rest periods arises under the Industrial Welfare Commission Wage Orders. Wage Order 4-2001, Section 12(A) states, "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." (Mara Dec. ¶ 11).

In California, the ten (10) minute rest break must be a net ten (10) minutes in a suitable rest area. The employer must show that it clearly articulates the right to a net ten (10) minutes, which means it must clearly communicate what "net" ten minutes means and that, regardless of what happens along the way to or from the rest area, employees are entitled to a full ten-minutes in the rest area. *See Bufil v. Dollar Fin. Grp., Inc.*, 162 Cal.App.4th 1193, 1199 (2008) (the "onus is on the employer to clearly communicate the authorization and permission [to take rest breaks] to its employees."). Plaintiffs contend that Defendant does not provide employees with rest periods that are a net ten minutes at a suitable rest area. (Mara Dec. ¶ 12).

Defendant argues that it permits and authorizes lawful rest periods. Defendant maintains that it provides employees with fifteen-minute rest periods, which Defendant contends shows that employees receive a net ten-minute rest period. Defendant further contends that it informs employees that they get at least ten full, duty-free minutes of rest at a suitable rest area. Defendant contends that if litigation continues, it would provide declarations from employees which show that employees received at least at

1  net ten minutes for rest breaks. Defendant contends that the Court would have to ask each employee

2  whether they received full ten-minute breaks. Defendant asserts that doing so would defeat class

3  certification. (Mara Dec. ¶ 13).

### 3. Unpaid Overtime Wages

5  The law requires employers to pay overtime wages of no less than one and one-half times

6  employees' regular rate of pay for all overtime hours worked. The regular rate of pay under the law

7  includes all remuneration for employment paid to the employee. In *Alvarado v. Dart Container*

8  *Corporation of California*, the California Supreme Court observed, "[r]egular rate of pay, which can

9  change from pay period to pay period, includes adjustments to the straight time rate, reflecting, among

10  other things, shift differentials and the per hour value of any nonhourly compensation the employee has

11  earned." *Alvarado v. Dart Container Corporation of California*, 4 Cal. 5th 542, 554 (2018). Here,

12  Plaintiffs contend that Defendant pays employees non-discretionary bonuses but fails to include these

13  payments in employees' regular rate of pay for purposes of overtime. Defendant argues that the bonuses

14  paid do not need to be factored into the regular rate of pay. Defendant contends that the Department of

15  Labor has found that the particular kinds of bonuses paid by Defendant do not need to be factored into the

16  regular rate of pay. For example, Defendant contends that referral bonuses do not need to be factored into

17  the regular rate of pay. (Mara Dec. ¶ 14).

### 4. Wage Statements

19  Plaintiff alleges that employees are not provided with accurate itemized wage statements. Section

20  226(a) provides that employers must furnish an accurate itemized statement in writing showing: (1) gross

21  wages earned; (2) total hours worked by the employee; (3) the number of piece rate units earned and

22  applicable piece rate if the employee is paid on a piece rate basis; (4) all deductions; (5) net wages earned;

23  (6) the inclusive dates of the period for which the employee is paid; (7) the name of the employee and only

24  the last four digits of his or her social security number or employee identification number other than a

25  social security number; (8) the name and address of the legal entity that is the employer; and (9) all

26  applicable hourly rates in effect during the pay period and corresponding number of hours worked at each

27  hourly rate by the employee. Plaintiff alleges that Defendant fails to provide employees with accurate

28  itemized wage statements because Defendant's wage statements do not meet Labor Code § 226(a)'s

-11-

1  requirements. Plaintiff contends that Defendant's wage statements failed to accurately list the overtime

2  rate of pay. (Mara Dec. ¶ 15).

3      Defendant disputes this claim. Defendant argues that employees can ascertain the required

4  information, such as the overtime rate, using simple math. Defendant relies on cases which hold that

5  "[w]age statements comply with § 226(a) when a plaintiff employee can ascertain the required information

6  by performing simple math, using figures on the face of the wage statement." *Hernandez v. BCI Coca-*

7  *Cola Bottling Co.*, 554 Fed. Appx. 661, 662 (9th Cir. 2014) (citing *Morgan v. United Retail Inc.*, 186

8  Cal.App.4th 1136 (2010)). (Mara Dec. ¶ 16).

9      Defendant also asserts that any violation of Labor Code § 226 was not "knowing and intentional."

10  *See* Cal. Lab. Code § 226(e) ("An employee suffering injury as a result of a *knowing and intentional*

11  failure by an employer" may recover damages) (emphasis added); *Amaral v. Cintas Corp. No. 2*, 163

12  Cal.App.4th 1157, 1195 (2008) ("Some statutory penalties are imposed only if an employers' violation

13  was 'willful' or 'knowing.' . . . [S]*ection 226, subdivision (e)* penalizes an employer's 'knowing and

14  intentional' failure to provide itemized wage statements under *section 226, subdivision (a)*[.]"); *Naranjo*

15  *v. Spectrum Security Services, Inc.*, 15 Cal.5th 1056, 1065 (2024) ("We now conclude that if an employer

16  reasonably and in good faith believed it was providing a complete and accurate wage statement in

17  compliance with the requirements of section 226, then it has not knowingly and intentionally failed to

18  comply with the wage statement law."). Defendant maintains that it reasonably and in good faith believes

19  that it was providing a complete and accurate wage statement in compliance with the law. (Mara Dec. ¶

20  17).

21      Defendant further contends that employees cannot show that they have suffered an injury because

22  of any potential violation of Labor Code § 226. Defendant contends that employees knew to talk to their

23  supervisor if they had any questions or concerns about their wage statements. As such, disputes exist as

24  to whether Defendant's wage statements violated Labor Code § 226(a), whether any such violation was

25  knowing and intentional, and whether employees suffered an injury. Defendant also relies on the case

26  *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308 (2018), for the position that employees do not

27  suffer injury under Labor Code § 226(a) so long as the wage statements correctly reflected the hours

28  worked and the pay received, even if the pay is later determined to be inaccurate. (Mara Dec. ¶ 18).

### 5.  Business Reimbursements

Plaintiffs allege that employees are not reimbursed for all business expenses. Under Labor Code § 2802, an employer must "indemnify its employees for expenses they necessarily incur in the discharge of their duties…" *Gattuso v. Harte-Hanks Shoppers, Inc.*, 169 P.3d 889 (2015). In *Cochran v. Schwan's Home Service, Inc.*, 228 Cal.App.4th 1137, 1140 (2014), it was held that § 2802 requires employers to reimburse employees who are required to use personal cell phones for work-related calls for a reasonable percentage of their cell phone bills. Plaintiffs assert that employees are required to use their personal cell phones for work purposes but are not reimbursed. (Mara Dec. ¶ 19).

Defendant asserts that employees do not need to use their personal cell phones for business purposes. Defendant asserts that it provides devices for employees so they can communicate with one another. Moreover, Defendant argues that employers must only reimburse employees for "necessary expenditures" under Labor Code § 2802. As such, employees must show that they incurred the expense, the expenses were necessary to discharge their duties, and the expenses were not reimbursed. *Alvarado v. Wal-Mart Assoc., Inc.*, 2021 U.S. Dist. LEXIS 245799 *1, *14-*15 (C.D. Cal. Nov. 3, 2021). Defendant contends that there is no necessity for employees to use their personal cell phones because Defendant provides other means of communication, and Defendant does not have a policy or practice of requiring employees to use their personal cell phones. As such, Defendant disputes that employees, in fact, used their personal cell phones in discharging their duties and, to the extent any employee did use their personal cell phone, disputes that employees were required to use their personal cell phones in discharging their work duties for Defendant. (Mara Dec. ¶ 20).

### 6.  Waiting Time Penalties

Plaintiff also contends that Defendant failed to pay employees their final wages within the timeframes outlined by the law. This claim is derivative of Plaintiff's meal period, rest period, and unpaid wages claims. Should Plaintiffs' meal period, rest period, and unpaid wages claims fail, these claims would also fail. (Mara Dec. ¶ 21).

Defendant contends that even if Plaintiffs were successful in their meal period, rest period, and unpaid wages claims, they would have to prove Defendant "willfully" failed to pay employees the appropriate wages due upon separation of employment. "A willful failure to pay wages within the meaning

of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Cal. Code Regs. Tit. 8 § 13520. "A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact, which would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Id.* Defendant contends that any failure to pay wages due at the separation of employment was not willful. Defendant argues that it would not be liable for waiting time penalties because a "good faith dispute" exists over the payment of those wages. *See* Cal. Code Regs. Tit. 8 § 13520; *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1201 (2008). (Mara Dec. ¶ 22).

### 7.  PAGA

Plaintiff also seeks PAGA penalties. The statute of limitations for PAGA violations goes back one year. Plaintiffs calculate the potential damages under Plaintiffs' PAGA claim as $6,882,400. As Plaintiffs' PAGA claims are based on the same alleged unlawful conduct as their class claims, Plaintiffs' PAGA claims are subject to the same risks on the merits. (Mara Dec. ¶ 23).

The Court may reduce any PAGA penalties awarded under Section 2699, subdivision (e)(2). The likelihood of the Court reducing the PAGA penalties awarded to Plaintiffs and the Aggrieved Employees – assuming liability is proven as to each of Plaintiffs' claims – is higher in this case, where these same individuals may also be receiving money for the same unlawful conduct under the class claims. *See Avila v. Cold Spring Granite Co.*, Case No. 1:16-cv-001533-AWI-SKO, 2018 U.S. Dist. LEXIS 6142 *1, *17 (E.D. Cal. Jan. 12, 2018) ("Because the PAGA penalties sought are at least partially duplicative of penalties granted by the underlying Labor Code violations, *see*, *e.g.*, Cal. Lab. Code §§ 203, 226, 558(a), 1194.2, and because a Court has discretion in whether and in what amount to award PAGA penalties, *see* Cal. Lab. Code § 2699(e)(2), Plaintiff recognizes that the potential PAGA penalties are highly uncertain."). As such, the Court may reduce any PAGA penalty amount awarded to Plaintiffs and the Aggrieved Employees. (Mara Dec. ¶ 24).

Defendant also contends that Plaintiffs would not be able to "stack" violations for each alleged violation and would only be entitled to one PAGA penalty per pay period for all violations. If this were

-14-

1  the case, the potential damages would be reduced. This amount would still be subject to reduction by the

2  Court for the reasons outlined above. Defendant further contends that no PAGA penalties would be

3  awarded because it asserts it would prevail on each of Plaintiffs' claims. (Mara Dec. ¶ 25).

4        Even if Defendant's liability is established, the Court is empowered to reduce any PAGA

5  penalties. The likelihood of a penalty reduction is higher in this case than others, as the Court may

6  determine that Defendant believed in good faith that it provided employees with lawful breaks, paid all

7  overtime wages owed, and accurately itemized wage statements. Plaintiffs recognize and reasonably

8  believe the Court could significantly reduce any PAGA penalties if Defendant was found liable for the

9  underlying Labor Code violations. (Mara Dec. ¶ 26).

10                **b.  Sufficient Discovery and Investigation Has Occurred**

11      Class Counsel conducted a thorough investigation into the facts of this lawsuit. Through informal

12  discovery, Defendant produced over a thousand pages of documents. These documents included policy

13  documents that covered Class Members' employment with Defendant, such as employee handbooks.

14  Included within these documents were Defendant's wage and hour policies, including its meal and rest

15  period policies. Defendant also produced multiple Excel files that included employees' hire and

16  termination dates, as well as a sampling of employees' time and pay records. Plaintiffs had an expert

17  review and analyze the sampling of time and pay records.

18        After conducting an analysis of the materials RDO produced, Class Counsel drew on their

19  extensive experience in similar cases to assess the strengths and weaknesses of Plaintiffs' claims. This

20  discovery allowed the Parties to assess the merits and value of Plaintiffs' claims and defenses thereto, if a

21  settlement was not reached. Based on their review and independent investigation into the facts and claims

22  asserted in this matter, Class Counsel believe that this settlement is fair, reasonable, and adequate and is

23  in the best interest of the Class.

24                **c.  Class Counsel Have Extensive Experience Acting as Class Counsel**

25        Class Counsel's experience in complex class action matters is extensive. Indeed, Mr. Mara from

26  the Mara Law Firm, PC was class counsel in *Hohnbaum et al. v. Brinker Restaurant Corp et al.,* which is

27  the subject case in the landmark decision of *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th

28  1004. Class Counsel have prosecuted numerous cases on behalf of employees for California Labor Code

violations and thus are experienced and qualified to evaluate the class claims present in this case, and the defenses thereto, and to evaluate settlement versus trial on a fully informed basis. This experience instructed Class Counsel on the risks and uncertainties of further litigation and guided their determination to endorse the proposed settlement.

### d. The Class Members' Response to the Settlement is Further Evidence That the Settlement is Fair and Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining a settlement's fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832, 837 (9th Cir. 1976). Here, not a single Class Member has objected to the settlement, and only one Class Member requested to be excluded from the settlement, resulting in a 99.84% participation rate in the settlement. The lack of objections and low number of requests for exclusion evidences the Class Members' endorsement of this non-reversionary settlement.

### e. The Court Should Approve the Settlement Administration Fee

The Parties agreed to hire Phoenix as the Settlement Administrator, a choice the Court approved in conjunction with granting preliminary approval. Phoenix was responsible for mailing the Class Notice to Class Members, obtaining better addresses for undeliverable Class Notices, responding to Class Member inquiries, providing weekly status reports to all counsel, receiving communications from the Class Members, and providing a declaration documenting its duties and responsibilities in administering the Class Notice. Following the grant of final approval, Phoenix will continue to calculate the payments to Participating Class Members, send the individual settlement shares to Participating Class Members, distribute other payments ordered by the Court, and perform such other duties as described in the Agreement. Phoenix's fee of $12,000 for services rendered and to be rendered is fair and reasonable and should be granted.

### f. The Court Should Approve the PAGA Payment to the LWDA

The payment of $75,000 (75% of $100,000) to the LWDA for its share of the applicable penalties claimed under PAGA is reasonable under the circumstances. The Parties negotiated a good faith amount to the LWDA. The sum to be paid to the LWDA was not the result of self-interest at the expense of other Class Members. The LWDA was provided notice of the settlement – including a copy of the settlement agreement – concurrently with the filing of the preliminary approval motion on December 17, 2024, and

the instant motion. Plaintiffs did not receive a response or objection to the settlement from the LWDA. Thus, Plaintiffs respectfully request the Court finally approve the sum of $100,000, of which $75,000 will serve as payment to the LWDA.

## VI.    CONCLUSION[8]

Based on the foregoing, Plaintiffs respectfully request that the Court find the settlement is fair, reasonable, and adequate and grant final approval of the settlement. Plaintiffs further request the Court approve the requested settlement administration fee and PAGA payment. Last, Plaintiffs respectfully request the Court enter final judgment in this matter.

Dated: October 10, 2025                                **MARA LAW FIRM, PC**

By:/s/  *Jill Vecchi*
    David Mara, Esq.
    Jill Vecchi, Esq.
    Attorneys for Plaintiffs

---

[8] Defendant provided notice of the proposed settlement to the appropriate federal and state officials, as required by the CAFA pursuant to 28 U.S.C. § 1715(b), on December 20, 2024. (*See* ECF Dkt. No. 42).