1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SIMON MUNOZ, et al.,                      No. 1:23-cv-00979-DAD-AC

12                    Plaintiffs,

13         v.                                    ORDER GRANTING PLAINTIFFS' MOTION
                                                 FOR FINAL CLASS APPROVAL AND
14    RDO EQUIPMENT CO.,                         MOTION FOR ATTORNEYS' FEES

15                    Defendant.                 (Doc. Nos. 46, 47)

16

17         This matter came before the court on November 17, 2025 for a hearing on plaintiffs'

18    unopposed motions for final approval of a class action settlement and for an award of attorneys'

19    fees, costs, and enhancement payments for plaintiffs as class representatives. (Doc. Nos. 46, 47.)

20    Attorneys Jill Vecchi and Douglas Han appeared on behalf of plaintiffs and the putative class.

21    Attorney Alex Spjute appeared on behalf of defendant. For the reasons set forth below, the court

22    will grant final approval of the class action settlement and will also grant the motion for

23    attorneys' fees, costs, and an enhancement payment to plaintiffs.

24                                          **BACKGROUND**

25         The court previously summarized plaintiffs' allegations in its July 30, 2025 order granting

26    plaintiffs' motion for preliminary approval of a class action settlement. (Doc. No. 45.) The court

27    incorporates here its previous discussion in the background section of its July 30, 2025 order

28    regarding plaintiffs' allegations and the details of the proposed settlement. (*Id.* at 1–4.) Because

                                                1

1    final approval of the proposed settlement was not achieved prior to September 11, 2025, the gross

2    settlement amount has now increased by 2% to $2,040,000.  (Doc. No. 47 at 7 n.2.)

3         On October 10, 2025, plaintiffs filed the pending unopposed motions for attorneys' fees,

4    costs, and an enhancement award for plaintiffs, and for final approval of the parties' class action

5    settlement.  (Doc. Nos. 46, 47.)  As of the date of the hearing on November 17, 2025, no

6    objections to the settlement had been received or filed with the court, and one class member has

7    opted out of the settlement.  (Doc. Nos. 47-2 at ¶¶ 4–11; 50.)

8                              **LEGAL STANDARDS**

9    **A.    Rule 23 Settlements**

10        Class actions require the approval of the district court before settlement.  Fed. R. Civ. P.

11   23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for

12   purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the

13   court's approval.").  "Approval under 23(e) involves a two-step process in which the Court first

14   determines whether a proposed class action settlement deserves preliminary approval and then,

15   after notice is given to class members, whether final approval is warranted."  *Haro v. Walmart,*

16   *Inc*., No. 1:21-cv-00239-NODJ-SKO, 2024 WL 1160492, at *4 (E.D. Cal. Mar. 18, 2024) (citing

17   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

18        The first step in the two-step process is preliminary approval.  At the preliminary approval

19   stage, the court conducts a preliminary fairness evaluation to determine if notice of the class

20   action settlement should issue to class members and, if applicable, whether the proposed

21   settlement class should be certified.  *See* David F. Herr, *Ann. Manual Complex Lit.* § 21.632 (4th

22   ed.).  Under Rule 23(e)(1), the court must direct notice to all class members who would be bound

23   by the settlement proposal if the parties show that "the court will likely be able to:"  (i) approve

24   the proposal under Rule 23(e)(2)'s fair, reasonable, and adequate standard; and (ii) certify the

25   proposed settlement class.  Fed. R. Civ. P. 23(e)(1); *see also Lounibos v. Keypoint Gov't Sols.*

26   *Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re*

27   *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)) (noting that federal

28   courts generally grant preliminary approval if "the proposed settlement appears to be the product

                                        2

of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval").

The second step of the process is the final approval. At the final approval stage, "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In doing so, the court must consider several factors, including whether: "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the proposal treats class members equitably relative to each other"; and "the relief provided for the class is adequate." *Id.* When considering whether "the relief provided for the class is adequate," the court should also take into account the following:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3).

*Id.* In addition to the two-step review process, Rule 23(e) also requires that: (i) the parties seeking approval file a statement identifying the settlement agreement; (ii) class members be given an opportunity to object; and (iii) no payment be made in connection with forgoing or withdrawing an objection, or forgoing, dismissing, or abandoning an appeal. Fed. R. Civ. P. 23(e)(3), (5).

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks and citations omitted). To protect the rights of absent class members, Rule 23(e) requires that the court approve such settlements "only after a fairness hearing and a determination that the settlement is fair, reasonable, and adequate." *Id.* When approval is sought of a settlement negotiated before formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Id.* In

3

such circumstances, the "settlement approval requires a higher standard of fairness" and a "more exacting review" so as "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (internal quotation marks and citations omitted). Rule 23 also "demand[s] undiluted, even heightened, attention" to the certification requirements when class certification is sought only for purposes of settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Accordingly, the district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g.*, *Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. 2014).

**B.    Private Attorneys General Act ("PAGA") Settlements**

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees. Cal. Lab. Code § 2699(a).[1] A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Super. Ct.*, 46 Cal. 4th 969, 986 (2009). Thus, a judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.*

The PAGA statute imposes several limits on litigants. First, because a PAGA action functions as a "substitute" for an action brought by the state government, a plaintiff suing under PAGA is limited to recovery of civil penalties only, rather than damages or unpaid wages available privately through direct or class action claims. *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 381 (2014), *overruled on other grounds by Quach v. Cal. Com. Club, Inc.*, 16 Cal. 5th 562 (2024), *and abrogated on other grounds by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022); *ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175, 182, 193 (2019), *rev'd in part on other grounds by Viking River Cruises, Inc.*, 596 U.S. 639. Second, to bring an action under PAGA, an aggrieved employee must first provide written notice to the California Labor and Workforce

---

[1] An "aggrieved employee" is defined as "any person who was employed by the alleged violator against whom one or more of the alleged violations was committed . . . ." Cal. Lab. Code § 2699(c)(1).

Development Agency ("LWDA") as well as to the employer.  Cal. Lab. Code § 2699.3(a)(1).

Third, any civil penalties recovered must be divided between the LWDA and the aggrieved

employees.  *See* Cal. Lab. Code § 2699(i) (2016) (requiring a 75%-25% apportionment); *id.* §

2699(m), (v)(1) (2024) (noting that the 2024 amendments, including the new 65%-35%

apportionment requirement, apply only to "civil action[s] brought on or after June 19, 2024").[2]

Fourth, and finally, the proposed settlement must be submitted to the LWDA, and a trial court

must "review and approve" any settlement of PAGA claims.  *Id.* § 2699(s)(2); *see also Haralson*

*v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (citation omitted)

(noting that because settling a PAGA claim "compromises a claim that could otherwise be

brought be the state," it requires that a court "review and approve any settlement of any civil

action pursuant to [PAGA]").

      Although there is no binding authority setting forth the appropriate standard of review to

be employed for PAGA settlements, California district courts "have applied a Rule 23-like

standard, asking whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and

reasonable in light of PAGA's policies and purposes.'"  *Haralson*, 383 F. Supp. 3d at 972

(quoting *Jordan v. NCI Grp., Inc.*, No. 16-cv-01701-JVS-SP, 2018 WL 1409590, at *2 (C.D. Cal.

Jan. 5, 2018)).  This standard is derived principally from the LWDA itself.  In commenting on a

proposed settlement including both class action and PAGA claims, the LWDA has offered the

following guidance:

> It is thus important that when a PAGA claim is settled, the relief
> provided for under the PAGA be genuine and meaningful, consistent
> with the underlying purpose of the statute to benefit the public and,
> in the context of a class action, the court evaluate whether the

/////

---

[2]  Plaintiff Munoz initiated this action and provided notice to the LWDA in accordance with the PAGA on February 16, 2023.  (Doc. No. 39 at 8.)  Accordingly, the court agrees with the parties that the 75%-25% apportionment of civil penalties between the LWDA and the Aggrieved Employees applies here, since the 2024 amendments do not apply retroactively.  *Cf. Mendoza v. Movement Mortg., LLC*, No. 2:24-cv-03479-DAD-CSK, 2025 WL 1646897, at *4 n.4 (E.D. Cal. June 11, 2025) ("For PAGA actions brought prior to June 19, 2024, plaintiffs received 25% of the penalties and the LWDA received 75%. . . .  Because this action was commenced after June 19, 2024, the 35% apportionment applies.").

1
2

> settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

3    *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the LWDA's

4    guidance with approval).[3]  Recognizing the distinct issues presented by class actions, this court is

5    persuaded by the LWDA's reasoning cited by the district court in *O'Connor* and therefore adopts

6    its proposed standard in evaluating the PAGA portion of the settlement now before the court.

7    *See, e.g.*, *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at

8    *6 (E.D. Cal. Apr. 27, 2020); *see also Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499-DJC-

9    CKD, 2025 WL 1557142, at *5 n.3 (E.D. Cal. June 2, 2025).  Accordingly, the court will approve

10   a settlement of PAGA claims upon a showing that the settlement terms:  (1) meet the statutory

11   requirements set forth by PAGA; and (2) are fundamentally fair, reasonable, and adequate in view

12   of PAGA's public policy goals.

13   　　　　When a proposed settlement involves overlapping class action and PAGA claims, courts

14   may employ a "sliding scale" in determining if the proposed settlement is "fundamentally fair,

15   reasonable, and adequate with reference to the public policies underlying the PAGA." *O'Connor*,

16   201 F. Supp. 3d at 1134; *see also Haralson*, 383 F. Supp. 3d at 972 (following *O'Connor*);

17   *McClure v. Brand Energy Serv., LLC*, No. 2:18-cv-01726-KJM-AC, 2021 WL 2168149, at *10

18   (E.D. Cal. May 27, 2021) (same); *Cooks v. TNG GP*, No. 2:16-cv-01160-KJM-AC, 2020 WL

19   5535397, at *9–10 (E.D. Cal. Sept. 15, 2020) (same).  As the district court in *O'Connor*

20   explained:

21
22
23
24
25

> For example, if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled.  By providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA.  Likewise, if the settlement resolves the important question of the status of workers as employees entitled to the protection of the Labor Code or contained substantial injunctive relief, this would support

26

---

[3]  The LWDA has also stated that it "is not aware of any existing case law establishing a specific

27   benchmark for PAGA settlements, either on their own terms or in relation to the recovery on
other claims in the action."  *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC, Doc. No.

28   736 at 2–3 (N.D. Cal. July 29, 2016).

> PAGA's interest in "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance."

*Id.* at 1134–35 (quoting the LWDA's guidance). At the same time, where "the compensation to the class amount[] is relatively modest when compared to the verdict value, the non-monetary relief is of limited benefit to the class, and the settlement does nothing to clarify [aggrieved workers' rights and obligations], the settlement of the non-PAGA claims does not substantially vindicate PAGA." *Id.* at 1135. Finally, "where plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment." *Id.* at 1134. Plaintiffs' special responsibility to other Aggrieved Employees is especially significant because "PAGA does not require class action procedures, such as notice and opt-out rights." *Id.* Thus,

> [t]he Court must be cognizant of the risk that despite this responsibility, there may be a temptation to include a PAGA claim in a lawsuit to be used merely as a bargaining chip, wherein the rights of individuals who may not even be members of the class and the public may be waived for little additional consideration in order to induce the employer to agree to a settlement with the class.

*Id.*

## DISCUSSION

### A.    Final Certification of Settlement Class

The court conducted an examination of the class action factors in its prior order granting preliminary approval of the settlement and found certification to be warranted. (Doc. No. 45 at 10–17.) Because no additional substantive issues concerning the certification have been raised, the court does not repeat its prior analysis here and finds that final class action certification in this case is appropriate.

The following class of an estimated 641 individuals is therefore certified for purposes of this settlement: "all current and former non-exempt, hourly employees who were employed by RDO in California at any time from April 25, 2019, through May 11, 2024." (Doc. No. 47 at 7.) In addition, plaintiffs Munoz and Blanco were appointed as class representatives and attorneys David Mara and Jill Vecchi of Mara Law Firm PC, and Douglas Han, Shunt Tatavos-Gharajeh,

1    and William Wilkinson of Justice Law Corporation were appointed as class counsel in the court's

2    prior order granting preliminary approval of the class settlement.  (Doc. No. 45 at 33.)

3         The parties agreed to retain Phoenix Settlement Administrators ("Phoenix") to handle the

4    notice and claims administration process and was appointed by the court as settlement

5    administrator in its prior order granting preliminary approval.  (Doc. Nos. 45 at 31; 47-1 at 16.)

6    The parties have specified in their settlement agreement that the administrative costs to Phoenix

7    are "up to $15,000," though the parties estimate that the administration costs will actually be

8    $12,000.  (Doc. Nos. 47 at 10; 47-1 at 44.)  The cost of administering the settlement will be

9    deducted from the gross settlement amount.  (Doc. No. 47-1 at 43–44.)

10   **B.    Final Approval of Class Action Settlement**

11        Class actions require the approval of the district court prior to settlement.  Fed. R. Civ.

12   P. 23(e).  To approve a settlement, a district court must:  (i) ensure notice is sent to all class

13   members; (ii) hold a hearing and make a finding that the settlement is fair, reasonable, and

14   adequate; (iii) confirm that the parties seeking approval file a statement identifying the settlement

15   agreement; and (iv) be shown that class members were given an opportunity to object.  Fed. R.

16   Civ. P. 23(e)(1)–(5).  The settlement agreement in this action was previously filed on the court's

17   docket (*see* Doc. No. 39-1 at 18–45), and class members have been given an opportunity to

18   object.  The court now turns to the adequacy of notice and its review of the settlement following

19   the final fairness hearing.

20        1.    <u>Notice</u>

21        Adequate notice of the class settlement must be provided under Rule 23(e).  *Hanlon v.*

22   *Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*

23   *Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th

24   Cir. 1994) (noting that the court need not ensure all class members receive actual notice, only that

25   "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL

26   107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made

27   to reach all class members, it does not require that each individual actually receive notice.").

28   "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to

alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.* ("*Churchill*"), 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery."  *Hanlon*, 150 F.3d at 1025.

The court previously reviewed the notice provided in this case at the preliminary approval stage and found the parties' proposal satisfactory.  (Doc. No. 45 at 28–30.)  Following that order, defendant sent the list of class members to Phoenix, the appointed settlement administrator.  (Doc. No. 47 at 11–12.)  Phoenix then conducted a National Change of Address search to update the list of proposed class members and mailed the court-approved notice to the members of that list.  (*Id.*)  None of those initial mailings were returned as undeliverable and accordingly all class members are estimated to have received actual notice of the settlement.

Given the above, the court accepts the reports of the settlement administrator and finds adequate notice has been provided, thereby satisfying  Rule 23(e)(1).  *Silber*, 18 F.3d at 1453–54; *Winans*, 2016 WL 107574, at *3.

2.    Final Fairness Determination

On November 17, 2025, the court held a final fairness hearing, at which class counsel and defense counsel appeared in-person.  The court now must determine whether the settlement is fair, adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).

At the final approval stage, the primary inquiry is whether the proposed settlement is fundamentally "fair, adequate, and reasonable."  *Lane*, 696 F.3d at 818 (quoting Fed. R. Civ. P. 23(e)); *Hanlon*, 150 F.3d at 1026.  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Lane*, 696 F.3d at 818–19.  Having already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits.  *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008);

9

*Churchill,* 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625.  Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants, and their strategies, positions and proof."  *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026).

 In assessing the fairness of a class action settlement, courts balance the following factors:[4]

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009).  These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case.  *Churchill.*, 361 F.3d at 576 n.7.

 Federal Rule of Civil Procedure 23(e)(2) requires the court "to consider 'the terms of any proposed award of attorney's fees' and scrutinize the settlement for evidence of collusion or conflicts of interest before approving the settlement as fair."  *Kim v. Allison*, 8 F.4th 1170, 1179

---

[4]  Federal Rule of Civil Procedure 23(e)(2) provides guidance on what a court should consider to determine whether a settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In so determining, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. Pro. 23(e)(2).

(9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)).  Accordingly, when evaluating the adequacy of

a class settlement, the court must apply the "heightened scrutiny" set out in *In re Bluetooth*

*Headset Products Liability Litigation*, 654 F.3d 935.  *Briseño v. Henderson*, 998 F.3d 1014, 1025

(9th Cir. 2021); *see also* Fed. R. Civ. P. 23(e)(2)(C)–(D).  The so-called *Bluetooth* factors—also

referred to as "subtle signs" of collusion—include:  (i) "when counsel receive a disproportionate

distribution of the settlement, or when the class receives no monetary distribution but class

counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides

"for the payment of attorneys' fees separate and apart from class funds," or a provision under

which defendant agrees not to object to the attorneys' fees sought; and (iii) "when the parties

arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *In re*

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947 (internal quotations and citations omitted).

"The presence of these three signs is not a death knell—but when they exist, 'they require[ ] the

district court to examine them, . . . develop the record to support its final approval decision,' and

thereby 'assure itself that the fees awarded in the agreement were not unreasonably high.'"  *Kim*,

8 F.4th at 1180 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)).

        The court first evaluates each *Churchill* factor to determine whether they weigh in favor

of final approval of this settlement before turning to the *Bluetooth* factors.

                    a.     *Strength of Plaintiffs' Case*

        When assessing the strength of a plaintiff's case, the court does not reach "any ultimate

conclusions regarding the contested issues of fact and law that underlie the merits of th[e]

litigation."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz.

1989).  The court cannot reach such a conclusion because evidence has not been fully presented.

*Id.*  Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the

litigation and the impact of those considerations on the parties' decisions to reach these

agreements."  *Id.*

        Plaintiffs maintain that a factfinder could find for defendant on a number of issues

presented in this case, such as whether employees chose voluntarily to forgo their meal and rest

breaks.  (Doc. No. 47 at 14–20.)  Moreover, plaintiffs took into consideration defendant's

11

1    currently pending appeal of the court's order denying defendant's motion to compel arbitration,

2    since a reversal would prevent class members from recovering any damages at all in this action.

3    (*Id.* at 14–15.)  Because of the multifaceted challenges plaintiffs face to reach judgment in their

4    favor on the merits, the court finds that consideration of this factor weighs in favor of granting

5    final approval of the parties' settlement in this action.  *See Lee v. JPMorgan Chase & Co.*, No.

6    13-cv-00511-JLS-JPR, 2015 WL 12711659, at *4 (C.D. Cal. Apr. 28, 2015) (finding that the

7    litigation risks and the pending appeal of the court's prior ruling denying a motion to compel

8    arbitration had the strength of plaintiffs' case factor weigh in favor of granting final approval of

9    class settlement).

10                   b.       *Risk, Expense, Complexity, and Likely Duration of Further Litigation*

11          When considering whether the relief for the class is "adequate," the court must take into

12    account "the costs, risks, and delay of trial and appeal."  Fed. R. Civ. P. 23(e)(2)(C)(i).  "[T]here

13    is a strong judicial policy that favors settlements, particularly where complex class action

14    litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (citing *Class Plaintiffs*, 955

15    F.2d at 1276).  As a result, "[a]pproval of settlement is preferable to lengthy and expensive

16    litigation with uncertain results."  *Johnson v. Shaffer*, No. 2:12-cv-01059-KJM-AC, 2016 WL

17    3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-

18    AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

19          Plaintiffs "recognize that none of their class-wide claims would result in a guaranteed

20    win."  (Doc. No. 47 at 14.)  Plaintiffs suggest that litigation of these claims and the pending

21    appeal of the court's order denying defendant's motion to compel arbitration would be time-

22    consuming, expensive, and uncertain.  (*Id.* at 14–15.)  Accordingly, the court finds that

23    consideration of this factor also weighs in favor of granting final approval.  *See Lee*, 2015 WL

24    12711659, at *5; *see also Wells v. DCI Donor Servs.*, No. 2:21-cv-00994-CKD, 2025 WL

25    2098702, at *4 (E.D. Cal. July 25, 2025) (finding that the risks associated with litigating an

26    uncertain action and the settlement agreement ensuring "timely relief" led this factor to weigh in

27    favor of granting final approval); *Diaz v. United Parcel Servs., Inc.*, No. 1:22-cv-00246-CDB,

28    2023 WL 8622325, at *6 (E.D. Cal. Dec. 13, 2023) ("The Court finds avoiding a possible adverse

1    ruling as to certification, trial, and subsequent appeals in this case strongly weighs in favor of

2    settlement rather than further protracted and uncertain litigation.").

3                        c.    *Risk of Maintaining Class Action Status Throughout Trial*

4         At the November 17, 2025 hearing on the motion for final approval of class settlement,

5    the court addressed the difficulties plaintiffs may have faced in certifying a class in this action.

6    (Doc. No. 50.)  Plaintiffs represented that the pending appeal of the court's order denying

7    defendant's motion to compel arbitration posed some risk to plaintiffs' ability to pursue this

8    litigation as a class action.  *See Lee*, 2015 WL 12711659, at *5 ("Therefore, there is some risk of

9    maintaining class certification depending on how the Ninth Circuit and/or the arbitrator decide

10   this issue.").  The court therefore concludes that consideration of this factor weighs in favor of

11   final approval of the class settlement.

12                        d.    *Amount Offered in Settlement*

13        To evaluate the fairness of the settlement award, the court should "compare the terms of

14   the compromise with the likely rewards of litigation."  *Protective Comm. for Indep. S'holders of*

15   *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968); *see also* Fed. R. Civ. P

16   23(e)(2)(C)–(D).  "It is well-settled law that a cash settlement amounting to only a fraction of the

17   potential recovery does not *per se* render the settlement inadequate or unfair."  *In re Mego Fin.*

18   *Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  To determine whether a settlement "falls

19   within the range of possible approval" a court must focus on "substantive fairness and adequacy,"

20   and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In*

21   *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quoting *Schwartz v.*

22   *Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).  In

23   addition, the court must consider whether "the proposal treats class members equitably relative to

24   each other" and whether "the relief provided for the class is adequate."  Fed. R. Civ. P.

25   23(e)(2)(C)–(D).

26        Here, as noted above, the parties in this case have agreed to a Gross Settlement Amount

27   ("GSA") of $2,040,000.  (Doc. No. 47 at 9.)  Kevin Lee, a case manager who works at Phoenix

28   and has assisted in administering this settlement, declares that the net settlement amount after the

13

1    various allocations to attorneys' fees, class representative enhancement payments, PAGA

2    payment, and settlement administration costs are deducted from the GSA will be $1,195,291.45.

3    (Doc. No. 47-2 at ¶¶ 1, 13.)  This net settlement amount is approximately $47,000 larger than the

4    net settlement amount evaluated by the court in its preliminary approval order and corresponds to

5    approximately 7.4% of plaintiffs' maximum potential recovery.  (Doc. No. 45 at 20.)

6        As noted in the court's prior order granting preliminary approval, the settlement

7    agreement in this action provides for $100,000 in civil penalties pursuant to PAGA.  (Doc. No. 47

8    at 10.)  Under PAGA, 75% of the civil penalties, or $75,000, will go to the LWDA and 25%, or

9    $25,000, will be included in the net settlement amount.  (*Id.*;) *see* Cal. Lab. Code § 2699(i).  The

10   court previously analyzed the fairness, adequacy, and reasonableness of this award in its prior

11   order granting preliminary approval of the settlement agreement.  (Doc. No. 45 at 22–23.)  The

12   court incorporates its prior analysis herein and concludes that the award is fair, reasonable, and

13   adequate in light of PAGA's public policy goals.  Moreover, the court previously directed

14   plaintiffs to specify whether they submitted their settlement agreement to the LWDA as required

15   by PAGA.  (*Id.* at 18.)  Plaintiffs represent that they submitted the settlement agreement

16   concurrently with the filing of their preliminary approval motion on December 17, 2024 and that

17   the LWDA has not objected or otherwise responded to that filing.  (Doc. No. 47 at 22–23.)

18   Accordingly, the court concludes that the PAGA civil penalties provided for in the settlement

19   agreement comply with the requirements of PAGA and are fair, reasonable, and adequate.

20       For the same reasons that the court concluded at the preliminary approval stage that the

21   overall settlement amount was adequate, the court similarly finds that consideration of this

22   *Churchill* factor weighs in favor of final approval of the class settlement.  *See Zuniga v. House*

23   *Foods Am. Corp.*, No. 8:22-cv-00372-JWH-JDE, 2025 WL 3145881, at *7 (C.D. Cal. July 8,

24   2025) (finding that the amount offered in settlement weighed in favor of final approval based on

25   the court's prior analysis of the amount being adequate and fair in its preliminary approval order).

26           e.    *Extent of Discovery Completed and Stage of the Proceedings*

27       "In the context of class action settlements, 'formal discovery is not a necessary ticket to

28   the bargaining table' where the parties have sufficient information to make an informed decision

1   about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)

2   (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 241 (5th Cir. 1982)).  Approval

3   of a class action settlement thus "is proper as long as discovery allowed the parties to form a clear

4   view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291

5   F.R.D. 443, 454 (E.D. Cal. 2013).  A settlement is presumed fair if it "follow[s] sufficient

6   discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d

7   964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528).  The court

8   must consider whether the process by which the parties arrived at their settlement is truly the

9   product of arm's length bargaining, rather than collusion or fraud.  *Millan v. Cascade Water*

10  *Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).  These concerns are also reflected in Rule

11  23(e)(2)'s focus on procedural fairness—whether "the class representatives and class counsel

12  have adequately represented the class" and whether "the proposal was negotiated at arm's

13  length."  Fed. R. Civ. P. 23(e)(2)(A)–(B).

14          Plaintiffs indicate that defendant produced over a thousand pages of documents through

15  informal discovery, including policy documents, employee handbooks, and excel files that

16  included samplings of employees' time and pay records.  (Doc. No. 47 at 21.)  Moreover, as

17  discussed in the court's order granting preliminary approval, the parties attended two private

18  mediation sessions and conducted "arms-length negotiations" in reaching the proposed settlement

19  agreement in this matter.  The court finds that the parties' engagement in discovery and in

20  multiple mediation sessions causes the consideration of this factor to weigh in favor of final

21  approval of the class settlement.

22                  f.      *Experience and Views of Counsel*

23          The court previously addressed class counsel's extensive experience in wage and hour

24  class action litigation in its order granting preliminary approval.  (Doc. No. 45 at 14–15.)

25  Because class counsel has not changed since the issuance of that order, the court incorporates its

26  prior discussion here.  Class counsel has reviewed discovery and conducted independent

27  investigation into the facts in this action.  (Doc. No. 47 at 21.)  From this review, class counsel

28  concluded that the settlement "is fair, reasonable, and adequate and is in the best interest of the

15

class." (*Id.*)  Accordingly, the court finds that consideration of this factor, in light of the representations of experienced class counsel, also weighs in favor of granting final approval of the class settlement.

g.     *Reactions of the Class Members*

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (citing cases).  The presumption that a settlement is fair, reasonable, and adequate is particularly strong when there is an absence of a single objection to a proposed class action settlement. *See id.*; *Barcia v. Contain-A-Way, Inc.*, No. 07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).  Nevertheless, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Cruz v. Sky Chefs, Inc.*, No. 12-cv-02705-DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (citing *Churchill,* 361 F.3d at 577).

Here, as discussed above, no member of the class has filed an objection to the settlement pending before the court for final approval.  Moreover, no class members raised any objections to the settlement at the final fairness hearing.  Accordingly, consideration of this factor weighs significantly in favor of granting final approval.

h.     *Collusion*

Finally, the court considers whether any of the *Bluetooth* factors which may be signs of collusion as recognized by the Ninth Circuit are present here.  *See Bluetooth*, 654 F.3d at 947.

First, the court does not find that class counsel is seeking a disproportionate distribution of the settlement.  With an average estimated class member recovery in this action of $1,867.64 and a requested award of attorneys' fees in the amount of $679,932, it does not appear that counsel seeks to receive a disproportionate distribution of the settlement, even though the award of attorneys' fees sought here—one-third of the settlement fund—is on the high end of amounts typically awarded in the Ninth Circuit.  (*See* Doc. Nos. 46 at 11; 47 at 7); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949 ("Under the percentage-of-recovery method, the

1   attorneys' fees equal some percentage of the common settlement fund; in this circuit, the

2   benchmark percentage is 25%."); *Morales*, 2011 WL 5511767, at *12 ("The typical range of

3   acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value,

4   with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.

5   2000)); *Castro*, 2021 WL 2042333, at *5, *12 (granting final approval of a class and collective

6   action settlement with an average individual class member recovery of $1,070.62 and an award of

7   $1,031,250.00 in attorneys' fees).

8           Second, the court finds that the settlement agreement before the court does contain a

9   "clear sailing arrangement."  A clear sailing provision is one in which defendant agrees to not

10  object to class counsel's motion for attorneys' fees.  *In re Bluetooth Headset Prods. Liab. Litig.*,

11  654 F.3d at 947 (describing a clear sailing provision).  In the settlement agreement, the parties

12  agreed that class counsel would file "unopposed motions and memorandums" for final approval

13  of the settlement agreement and for attorneys' fees.  (*Id.* at 35–36.)  Although the "very existence

14  of a clear sailing provision increases the likelihood that class counsel will have bargained away

15  something of value to the class," *Id.* at 948 (citation omitted), the existence of a clear sailing

16  provision is not necessarily fatal to final approval.  Rather, "when confronted with a clear sailing

17  provision, the district court has a heightened duty to peer into the provision and scrutinize closely

18  the relationship between attorneys' fees and benefit to the class." *Id.* (citing *Staton*, 327 F.3d at

19  954).  Plaintiffs have not addressed the existence of the clear sailing provision in their motion for

20  final approval.  (Doc. No. 47 at 13–14.)

21          The court has already found above that class counsel is not seeking a disproportionate

22  award of attorneys' fees and observes that the net settlement amount that will be disbursed to

23  class members of $1,195,291.45 exceeds the amount sought in attorneys' fees of $679,932.  *Cf.*

24  *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1051 (9th Cir. 2019) (finding that an award of

25  attorneys' fees exceeding the amount disbursed to the class is not "*per se* problematic" but

26  requires additional scrutiny by the district court).  Below, in considering plaintiff counsel's

27  motion for attorneys' fees, the court finds that the requested fees are reasonable, which finding

28  supports the conclusion that the clear sailing provision does not render this settlement agreement

17

1  a result of collusion.  *See Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497-DAD-

2  BAM, 2019 WL 316814, at *7 (E.D. Cal. Jan. 24, 2019) (finding that the clear sailing provision

3  in the settlement agreement in that case did not indicate collusion where the attorneys' fees

4  requested were reasonable); *see also Swain v. Anders Grp, LLC*, No. 1:21-cv-00197-SKO, 2023

5  WL 2976368, at *10 (E.D. Cal. Apr. 17, 2023) (same).  Accordingly, the court concludes that the

6  inclusion of the clear sailing arrangement does not indicate here that the settlement agreement is a

7  result of collusion.

8         The third *Bluetooth* factor, whether the settlement agreement contains a reversionary

9  clause to return unawarded fees to defendant, is not present in this case.  (Doc. No. 39-1 at 21

10  ("No portion of the Gross Settlement Amount will revert to Defendant for any reason.").)  The

11  court therefore finds that consideration of the *Bluetooth* factors does not indicate that this

12  settlement agreement was the result of collusion.

13         Upon consideration of the *Churchill* factors, the *Bluetooth* factors, and the requirements of

14  PAGA, the court finds on balance that the settlement agreement before the court for final

15  approval is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e); Cal. Lab. Code § 2699.

16  Accordingly, the court will grant plaintiffs' motion for final approval of the parties' class action

17  settlement.

18  **C.     Attorneys' Fees, Costs, and Incentive Payments**

19         Plaintiffs also move for:  (1) an award of attorneys' fees paid to class counsel in the

20  amount of $679,932, which encompasses 33.33% of the settlement amount; (2) approval of an

21  award of costs in the amount of $32,776.55; and (3) approval of enhancement payments for class

22  representatives in the amount of $10,000 each.  (Doc. No. 46 at 2.)  The court will address each of

23  these awards below.

24         1.     Attorneys' Fees

25         The court has an "independent obligation to ensure that the award [of attorneys' fees], like

26  the settlement itself, is reasonable, even if the parties have already agreed to an amount."

27  *Bluetooth*, 654 F.3d at 941.  This is because, when fees are to be paid from a common fund, the

28  relationship between the class members and class counsel "turns adversarial."  *In re Mercury*

18

1    *Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply*

2    *Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As such, the district court assumes a

3    fiduciary role for the class members in evaluating a request for an award of attorneys' fees from

4    the common fund.  *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645,

5    655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

6         The Ninth Circuit has approved two methods for determining attorneys' fees in such cases

7    where the attorneys' fee award is taken from the common fund set aside for the entire settlement:

8    the "percentage of the fund" method and the "lodestar" method.  *Vizcaino v. Microsoft Corp.*, 290

9    F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in

10   common fund cases to choose either method.  *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No.

11   14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016).  Under either

12   approach, "[r]easonableness is the goal, and mechanical or formulaic application of either

13   method, where it yields an unreasonable result, can be an abuse of discretion."  *Fischel v.*

14   *Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).  As noted above, the

15   Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common

16   fund cases.  *Id.* at 1047–48; *see also Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate

17   25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation

18   in the record of any 'special circumstances' justifying a departure.").

19        Reasons to vary the benchmark award may be found when counsel achieves exceptional

20   results for the class, undertakes "extremely risky" litigation, generates benefits for the class

21   beyond simply the cash settlement fund, or handles the case on a contingency basis.  *Vizcaino*,

22   290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55.  Ultimately,

23   however, "[s]election of the benchmark or any other rate must be supported by findings that take

24   into account all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.  The Ninth Circuit

25   has approved the use of lodestar cross-checks as a way of determining the reasonableness of a

26   particular percentage recovery of a common fund.  *Id.* at 1050 ("Where such investment is

27   minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a

28   lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a

19

higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, the parties' settlement agreement provides that class counsel will seek an award not to exceed 35% of the gross settlement amount. (Doc. No. 47-1 at 11.) As noted above, plaintiffs' counsel seeks an award of attorneys' fees representing one-third of the total gross settlement amount. (Doc. No. 46 at 7.) The requested 33.33% fee is higher than the 25% benchmark rate in the Ninth Circuit, but it is not an uncommon percentage in wage and hour class actions litigated in the Eastern District of California. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (listing cases where courts approved attorneys' fees of approximately one-third of the total settlement); *see also Anderson v. Safe Streets USA, LLC*, No. 2:18-cv-00323-KJM-JDP, 2024 WL 4826446, at *2 (E.D. Cal. Nov. 19, 2024) (finding that the proposed award of attorneys' fees consisting of 33% of the gross settlement amount was reasonable); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1020–22 (E.D. Cal. 2019) (finding that the use of a 33% benchmark was appropriate given the complexity of the case and the extraordinary results for the class).

Plaintiffs argue that the requested increase from the benchmark is reasonable based on the past work completed by class counsel in litigating this action, including prevailing on a motion to compel arbitration. (Doc. No. 46 at 9.) Additionally, plaintiffs maintain that the increase over and above the benchmark is warranted because this litigation was "complex, risky, expensive, and time-consuming" and was taken on a contingency basis. (*Id.* at 10.) "Risk is a relevant circumstance" when calculating an appropriate benchmark. As the court has found above, class counsel in this case took on risk by pursuing this action in the face of an arbitration agreement that may have barred class relief and by pursuing the action on a contingency fee basis. *Vizcaino*, 290 F.3d at 1048 (finding that increased fees were reasonable where class counsel took on the risk of their case failing); *see also Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-DB, 2017 WL 3116626, at *13 (E.D. Cal. July 21, 2017) (finding that class counsel pursuing an action on a contingency fee basis supported a higher benchmark). Additionally, class counsel achieved a favorable result on defendant's motion to compel arbitration and in negotiating a net recovery of

20

1  $1,867.64 per class member which, given the plaintiffs' hourly pay rate of $18, constitutes more

2  than 100 hours of compensation for the employee class members.  *See Hitt v. Cardinal Health*

3  *100, Inc.*, No. 14-cv-07403-R, 2017 WL 11633474, at *1 (C.D. Cal. Aug. 14, 2017) (finding that

4  a net recover of $1,292.28 per class member in a wage and hour class action was an exceptional

5  result).  A departure from the benchmark is also supported by the absence of any class member

6  objection to the settlement agreement.  Finally, the class notice specifically advised class

7  members that class counsel could seek up to 35% of the gross settlement amount in attorneys'

8  fees and no class members objected to the settlement on this basis.  (Doc. No. 47-2 at 9.)  The

9  court finds that consideration of these factors supports plaintiffs' requested award in an amount

10  higher than the benchmark.  However, to further evaluate the reasonableness of plaintiffs' request

11  and of the proposed benchmark, the court will also conduct a lodestar cross check.  *See Anderson*,

12  2024 WL 4826446, at *2–3 (conducting lodestar cross-check to evaluate reasonableness of

13  requested benchmark).  In its order granting preliminary approval, the court directed class counsel

14  to provide billing records and calculations for this purpose in connection with their motions for

15  final approval and attorneys' fees.

16      Where a lodestar is merely being used as a cross-check, the court "may use a 'rough

17  calculation of the lodestar.'"  *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-01662-OWW-MJS,

18  2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret*

19  *Stores, LLC*, No. 06-cv-04149-MMM-SH, 2008 WL 8150856 (C.D. Cal. July 21, 2008)).

20  Moreover, beyond simply the multiplication of a reasonable hourly rate by the number of hours

21  worked, a lodestar multiplier can be applied.  The Ninth Circuit has found that multipliers

22  between one and four are appropriately applied in common fund cases.  *Vizcaino*, 290 F.3d at

23  1051 n.6 (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d

24  Cir. 1998)); *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995)

25  ("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class

26  action litigation.") (citing *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)).

27      Class counsel assert that they have devoted 783 hours to this case resulting in a lodestar

28  fee of $586,740, consisting of $207,770 in fees generated by the Mara Law Firm PC and

21

1  $378,970 in fees generated by the Justice Law Corporation.  (Doc. Nos. 46 at 11–12; 46-1 at ¶ 22;

2  46-2 at ¶ 11.)  Accordingly, plaintiffs request a lodestar multiplier of 1.16 to equal 33.33% of the

3  gross settlement amount.  (Doc. No. 46 at 12.)  In support of their pending motion, plaintiffs

4  provide the sworn declarations of attorneys David Mara and Douglas Han.  (Doc. Nos. 46-1; 46-

5  2.)  Attorneys Mara and Han declare that plaintiffs and class were represented by the following

6  attorneys from the Mara Law Firm PC and the Justice Law Corporation.

- David Mara, the president of Mara Law Firm, PC who has 21 years of civil litigation experience.  His current hourly billing rate is $850.

- Jill Vecchi, a current partner at Mara Law Firm, PC who has 10 years of wage and hour class action litigation experience.  Her current hourly billing rate is $650.

- Douglas Han, the founding member of Justice Law Corporation with 20 years of civil litigation experience. His current hourly billing rate is $900.

- Shunt Tatavos-Gharajeh, a partner at Justice Law Corporation with 15 years of civil litigation experience.  His current hourly billing rate is $800.

- Christopher Petersen, a senior attorney at Justice Law Corporation with 17 years of civil litigation experience.  His current hourly billing rate is $800.

- William Wilkinson, an associate attorney at Justice Law Corporation with 3 years of civil litigation experience.  His current hourly billing rate is $500.

19  (Doc. Nos. 46-1 at 1–8; 46-2 at 3–15.)  Attached to those declarations are time records and

20  invoices for the work performed by each of plaintiffs' counsel.  (Doc. Nos. 46-1 at 10–19; 46-2 at

21  18–31.)  The court finds that these rates are fair and reasonable in this case.  *See Aldapa v. Fowler*

22  *Packing Co.*, No. 1:15-cv-00420-ADA-SAB, 2023 WL 3853482, at *11 (E.D. Cal. June 6, 2023)

23  (finding rates for partner attorneys ranging from $600 to $900 and rates for associate attorneys

24  ranging from $400 to $550 to be fair and reasonable); *see also Mathein v. Pier 1 Imps. (U.S.),*

25  *Inc.*, No. 1:16-cv-00087-DAD-SAB, 2018 WL 1993727, at *11 (E.D. Cal. Apr. 27, 2018)

26  (finding that, in 2018, $695 was a reasonable hourly rate for partners and $495 was a reasonable

27  hourly rate for associates).

28  /////

Applying the reasonable hourly rates to the number of hours reasonably billed in this action as reflected in plaintiffs' counsels' billing records,[5] the court calculates the lodestar amount to be $586,740 as shown in the following table:

| Timekeeper | Rate | Hours | Total |
|---|---|---|---|
| David Mara | $850 | 154.2 | $131,070 |
| Jill Vecchi | $650 | 118 | $76,700 |
| Douglas Han | $900 | 141.9 | $127,710 |
| Shunt Tatavos-Gharajeh | $800 | 125.3 | $100,240 |
| Christopher Petersen | $800 | 97.4 | $77,920 |
| William Wilkinson | $500 | 146.2 | $73,100 |
| **Grand Total:** | | | $586,740 |

Accordingly, the court adopts $586,740 as its initial lodestar calculation. To achieve the sought award of $679,932, a multiplier of approximately 1.16 to the lodestar is required. The court finds that, based on the risk class counsel took in pursuing this action on a contingency fee basis and the quite favorable results reached for the class, a modest multiplier of 1.16 is reasonable in this case. *See Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*,

---

[5] The court observes that counsel for Mara Law Firm PC has provided only somewhat vague descriptions for the tasks completed through general categories of work completed and has failed to provide any dates for their performed work, which is somewhat akin to block billing. (Doc. No. 46-1 at 11–13); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) ("Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case rather than itemizing the time expended on specific tasks.") (internal quotation marks omitted); *Ambrose v. US Med-Equip, LLC*, No. 1:23-cv-00114-SAB, 2024 WL 307843, at *16 (E.D. Cal. Jan. 26, 2024) ("Indeed, the information provided is not even block billing, as no dates or tasks are delineated at all[.]"); *Keegan v. Am. Honda Motor Co.*, No. 10-cv-09508-MMM-AJW, 2014 WL 12551213, at *26 (C.D. Cal. Jan. 21, 2014) (finding that providing only general billing categories is a form of block billing). Nevertheless, the court declines to exercise its discretion in this case to reduce the hours used in its lodestar calculation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (finding that district courts may impose a reduction of hours of no more than 10% as a matter of discretion without more specific explanation); *see also Ambrose*, 2024 WL 307843, at *16 (declining to reduce hours in lodestar calculation despite use of block billing).

23

No. 13-cv-04460-GHK-MRW, 2016 WL 6156076, at *15–16 (C.D. Cal. Aug. 16, 2016) (finding a lodestar multiplier of 1.2 appropriate where class counsel achieved a favorable settlement on a contingency-fee basis); *see also Ward v. United Airlines, Inc.*, No. 15-cv-02309-WHA, 2024 WL 269149, at *8 (N.D. Cal. Jan. 24, 2024) (observing that the mean multiplier in common fund cases in the Ninth Circuit is typically between 1.26 and 1.54); *Mergens v. Sloan Valve Co.*, No. 16-cv-05255-SJO-SK, 2017 WL 9486153, at *12 (C.D. Cal. Sept. 18, 2017) ("Moreover, the lodestar multiplier of 1.71 is well within the range of reasonableness for similarly complex class actions.").

For the reasons set forth above, the court concludes that the lodestar cross-check supports the requested award of $679,932 in attorneys' fees, an amount equal to one-third of the gross settlement fund in this case. Therefore, the court will approve an award of $679,932 in attorneys' fees.

### 2.    Costs

Additionally, class counsel seeks to recover the costs and expenses advanced while prosecuting this litigation. Such awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for: "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees." *Id.*

Here, class counsel request reimbursement in the amount of $32,776.55. (Doc. No. 46 at 14.) Plaintiffs' counsel have provide a summary of costs incurred by both the Mara Law Firm PC and the Justice Law Corporation as exhibits to attorneys Mara and Han's declarations. (Doc. Nos. 46-1 at 14–18; 46-2 at 53.) A review of these expenses reveals that the costs were incurred through filing fees, mediation fees, postage, expert witness fees, service of documents, various PACER downloads, and costs associated with online legal research. (*Id.*) The court finds that these costs are reasonable. Accordingly, the court will approve the reimbursement of costs and expenses in the amount requested.

1          3.      Enhancement Payments for Class Representatives

2          Courts frequently approve "service" or "incentive" awards in class action cases. *W.*

3  *Publ'g Corp.*, 563 F.3d at 958–59.  Generally speaking, incentive awards are meant to recognize

4  the effort of class representatives "for work done on behalf of the class, to make up for financial

5  or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

6  willingness to act as a private attorney general." *Id.*  The district court evaluates each award

7  individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the

8  interests of the class, the degree to which the class has benefitted from those actions, . . . the

9  amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e]

10  fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d

11  1004, 1016 (7th Cir. 1998)).

12          The courts of the Ninth Circuit typically find incentive awards of $5,000 to be

13  "presumptively reasonable." *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463

14  (9th Cir. 2000) (endorsing $5,000 service awards to named representatives); *Bellinghausen v.*

15  *Tractor Supply Co.*, 306 F.R.D. 245, 246 (N.D. Cal. 2015) (collecting cases); *In re Toys R Us-*

16  *Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014) (awarding plaintiffs $5,000

17  each "consistent with the amount courts typically award as incentive payments").  Higher

18  amounts can be appropriate, such as in employment actions, where a plaintiff risks retaliation or

19  blacklisting as a result of suing her employer. *See, e.g.*, *Buccellato v. AT&T Operations, Inc.,* No.

20  5:10-cv-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011).

21          Plaintiffs seek an incentive award of $10,000 for each named representative.  (Doc. No.

22  46 at 14–15.)  In its order granting preliminary approval, the court directed plaintiffs to provide

23  information on the median, minimum, and maximum awards for class members to determine

24  whether this incentive award payment was commensurate with the average or median award to be

25  received by the class.  (Doc. No. 45 at 28.)  Plaintiffs have provided that named plaintiffs Munoz

26  and Blanco would ordinarily receive $1,283.35 and $550.39 respectively from the settlement

27  without an incentive award.  (Doc. No. 46 at 15.)  Kevin Lee, the case manager at Phoenix

28  assisting in administering this settlement, declares that under the settlement agreement the highest

25

1    settlement award is $4,127.57, the average settlement award is $1,532.20, and the lowest

2    settlement award is $15.63.  (Doc. No. 47-2 at ¶ 14.)  Plaintiffs' requested incentive award for

3    named representatives is then roughly 6.5 times the average settlement award in this action.  In

4    light of plaintiffs' efforts in litigating this case and the risks they took regarding their reputation

5    and the possibility of a judgment being entered against them for attorneys' fees, as described in

6    the court's prior order, the court finds that this disparity is justified and that a $10,000 incentive

7    award is reasonable here where the gross settlement amount exceeds $2,000,000.  *See*

8    *Bellinghausen*, 306 F.R.D. at 267 ("Incentive awards typically range from $2,000 to $10,000.  . . .

9    Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake

10   a significant 'reputational risk' by bringing suit against their former employers.") (quoting *W.*

11   *Publ'g Corp.*, 563 F.3d at 958–59); *see also Congdon v. Uber Techs., Inc.*, No. 16-cv-02499-

12   YGR, 2019 WL 2327922, at *9–10 (N.D. Cal. May 31, 2019) (finding that the incentive awards,

13   which in total would comprise 1% of the total recovery in the settlement agreement, were

14   reasonable); *Bolton v. U.S. Nursing Corp.*, No. 12-cv-04466-LB, 2013 WL 5700403, at *6 (N.D.

15   Cal. Oct. 18, 2013) (finding that a $10,000 incentive award was commensurate with average

16   settlement recoveries of $595.91 because several class members would receive significant

17   settlements with the largest such award being in the amount of $3,602.67); *Ridgeway v. Wal-Mart*

18   *Stores, Inc.*, 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (approving $15,000 incentive awards

19   based on the named plaintiffs' involvement with the litigation and the reputational risk they took

20   in bringing a wage-and-hour action).

21          Accordingly, the court will award the $10,000 enhancement payments requested.

## CONCLUSION

23   For the reasons explained above:

24   1.     Plaintiffs' motion for final approval of the class action settlement (Doc. No. 47) is

25          GRANTED, and the court approves the parties' settlement agreement as fair,

26          reasonable and adequate;

27   2.     Plaintiffs' motion for an award of attorneys' fees, costs, and enhancement

28          payments (Doc. No. 46) is GRANTED;

3.    The court awards the following sums:

    a.    Class Counsel shall receive $679,932 in attorneys' fees and $32,776.55 in costs;

    b.    Plaintiffs Munoz and Blanco shall receive $10,000 each as incentive payments; and

    c.    Phoenix shall receive up to $15,000 in settlement administration costs;

    d.    The parties shall direct payment of 75% of the settlement allocated to the PAGA payment, or $75,000, to the LWDA as required by California law, and the remainder of the PAGA payment, $25,000, shall be included in the net settlement fund;

4.    The parties are DIRECTED to effectuate all terms of the settlement agreement and any deadlines or procedures for distribution set forth therein;

5.    This action is DISMISSED with prejudice in accordance with the terms of the parties' amended settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement;

6.    The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:    **December 12, 2025**

*Dale A. Drozd*

DALE A. DROZD
UNITED STATES DISTRICT JUDGE